# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-22800-CIV-SCOLA/TORRES

DIEGO AGNELLI,

      Plaintiff/Counter-Defendant,

v.

LENNOX MIAMI CORP.,

      Defendant/Counter-Plaintiff.

_____/

### LENNOX'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendant/Counter-Plaintiff, LENNOX MIAMI CORP., a Florida corporation ("Defendant" or "Lennox"), files its Answer, Affirmative Defenses and Counterclaim against Plaintiff/Counter-Defendant, DIEGO AGNELLI ("Plaintiff" or "Agnelli"), and states as follows:

### INTRODUCTION

Lennox is a Florida corporation that owns the Lennox Hotel on Miami Beach at Collins Avenue and 19th Street (the "Hotel").  Plaintiff is a former director, officer and employee of Lennox who misappropriated more than $2 million from Lennox, mismanaged the operations of Lennox and withheld information and documents from shareholders and its only other director to conceal his wrongdoings, and engaged in other brazenly wrongful activities solely for personal self-gain, all contrary to his duties, obligations and responsibilities.  After he was caught, Lennox terminated Plaintiff for cause.

But even after his termination, Plaintiff continued his audacious ways.  After he was terminated and contrary to Lennox's express written instructions, Plaintiff returned to the Hotel, broke into the management office under false pretenses, and stole documents and other personal property belonging to Lennox.  In connection with these actions, Plaintiff surreptitiously accessed (or caused others to access) the Hotel's security video footage software and changed the password to such software in an attempt to conceal his unlawful activities.  Since then, Lennox has been unable to access such security video footage or provide it to the Miami Beach police.

Despite having been terminated and having acknowledged his termination by bringing this suit to recover $6 Million as liquidated damages for his termination, Plaintiff continued to act as though he remained employed by Lennox even after his termination.  For weeks after his termination, he continued to instruct, direct and interact with the Hotel's employees, third-party management company, and other service providers as if nothing had changed.  The Hotel's management company complained that Plaintiff's interference obstructed its ability to operate the Hotel properly.  As of this date, Plaintiff still refuses to give Lennox access to its own bank account or the books, records, and other Lennox property that he converted after he was terminated.  Having been terminated for cause, Plaintiff is no longer an employee, officer or director of Lennox, and his interference with Lennox's operations must stop.

Plaintiff's lone claim to recover $6 Million for being terminated from employment is based upon terms set forth in a purported employment agreement that he attached to his Complaint.  That agreement is void and unenforceable.  Acting on behalf of both Lennox (employer) and himself (employee), Plaintiff drafted that agreement without any consultation, negotiation or input from anyone else at Lennox, and then fraudulently

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

induced Lennox's vice-president (the "Appointing Officer") to sign it.  Even if the purported employment agreement itself were valid (it is not), Plaintiff is not entitled to any recovery because he was duly terminated for cause (for the reasons set forth in detail below) and such agreement does not entitle Plaintiff to any recovery if he is terminated for cause.  Further, even if the agreement were valid (it is not) and Plaintiff had been terminated without cause (he was not), the $6 Million liquidated damages provision would be unenforceable.  It is an unenforceable penalty under Florida law.

Plaintiff's fraudulent attempt to create his own one-sided employment agreement was just one component of his nearly decade-long scheme to improperly exert unilateral control over and fleece Lennox.  But, this action should serve to be the end of it.  By this action, Lennox seeks to hold Plaintiff accountable for his reign of illegal self-dealing and the resulting damages.

## ANSWER

Lennox hereby answers the allegations in the Complaint as follows:

1.      Lennox admits that this purports to be an action for damages in excess of $75,000, but denies that Plaintiff is entitled to any relief whatsoever.

2.      Lennox admits that Plaintiff is an individual who is *sui juris*.  Lennox is without sufficient information or knowledge to admit or deny the remaining allegations in paragraph 2 of the Complaint and, therefore, denies same.

3.      Lennox admits the allegations in paragraph 3 of the Complaint.

4.      The statements in paragraph 4 of the Complaint are legal conclusions, and, therefore, do not require a response.  To the extent a substantive response is deemed necessary, Lennox states that it is without sufficient information or knowledge either to admit or deny these allegations, and, therefore, denies same.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

5.     The statements in paragraph 5 of the Complaint are legal conclusions, and, therefore, do not require a response.  To the extent a substantive response is deemed necessary, Lennox admits that venue is proper in this Court but denies that it breached any contract or engaged in any other wrongful activity.

6.     Lennox admits the allegations in paragraph 6 of the Complaint.

7.     Lennox admits that Agnelli served as president of Lennox from November 2010, but denies that he served through July 2020.   Plaintiff's employment was terminated for cause on June 22, 2020.

8.     Lennox admits that Plaintiff and Lennox's vice-president (under false pretenses) signed a document titled "Employment Agreement" (the "Employment Agreement"), but is without knowledge as to whether the document attached to the Complaint is a true and correct copy, and, therefore, denies same. Lennox denies the validity or enforceability of same or the provisions sought by Plaintiff to be enforced.

9.     Lennox admits that Juan Castellanos Bonillo's ("Castellanos") signature is on the Employment Agreement and that he provided investment capital for Lennox, but further states that Castellanos was fraudulently induced into signing that document and it is, therefore, void.  Lennox further admits that Castellanos is Agnelli's father-in-law. Lennox denies that Plaintiff put in sweat equity for Lennox.  Lennox denies all other allegations set forth in paragraph 9 of the Complaint.

10.    Lennox denies that the Employment Agreement is a valid, binding enforceable agreement, and, therefore, denies the allegations in paragraph 10 of the Complaint.

11.    Lennox denies the allegations set forth in paragraph 11 of the Complaint.

12.     Lennox admits that the Hotel is a modern reinterpretation of an iconic 1930's Art Deco building, but denies all other allegations in paragraph 12 of the Complaint.

13.     Lennox denies the allegations set forth in paragraph 13 of the Complaint.

14.     Lennox denies the allegations set forth in paragraph 14 of the Complaint.

15.     Lennox denies the allegations set forth in paragraph 15 of the Complaint.

16.     Lennox denies the allegations set forth in paragraph 16 of the Complaint.

17.     Lennox denies the allegations set forth in paragraph 17 of the Complaint.

18.     Lennox denies that the Employment Agreement is a valid, binding enforceable agreement, and, therefore, denies the allegations in paragraph 18 of the Complaint.  Lennox further states that the document speaks for itself.

19.     Lennox admits that there is a family law proceeding styled as set forth in paragraph 19 of the Complaint, but is without sufficient information or knowledge either to admit or deny the remaining allegations set forth in paragraph 19 of the Complaint, and, therefore, denies same.

20.     Lennox admits that Plaintiff has a 12.5% ownership stake in Lennox, that Analia Castellanos has a 12.5% ownership stake in Lennox, and that Invernorth Limited has a 75% ownership stake in Lennox, and is owned by a Wyoming trust.  Lennox is without sufficient information or knowledge either to admit or deny Plaintiff's whereabouts on June 22, 2020, and, therefore, denies these allegations.  Lennox denies the remaining allegations set forth in paragraph 20 of the Complaint.

21.     Lennox denies the allegations set forth in paragraph 21 of the Complaint.

22.     Lennox denies the allegations set forth in paragraph 22 of the Complaint.

23.     Lennox denies the allegations set forth in paragraph 23 of the Complaint. First, the Employment Agreement is void, and as a result, Plaintiff is not entitled to recover any sums thereunder.  Second, even if the Employment Agreement were valid, the conditions for Plaintiff's recovery of liquidated damages thereunder have not been met.  Plaintiff was terminated for cause, and the liquidated damages provision only applies, if at all, if Plaintiff were terminated without cause.  Third, the liquidated damages clause is invalid and unenforceable.  Fourth, before he was terminated for cause, Plaintiff first failed to fulfill his duties, obligations and responsibilities owed to Lennox under the Employment Agreement or otherwise, and, therefore, he is not entitled to any recovery.

24.     Lennox admits that Plaintiff has retained counsel, but is without sufficient information or knowledge to be able either to admit or deny the other allegations in paragraph 24 of the Complaint, and, therefore, denies same.

## COUNT I – BREACH OF CONTRACT

25.     Lennox re-alleges and incorporates herein its answers to the allegations 1 through 24 above.

26.     Lennox denies the allegations set forth in paragraph 26 of the Complaint.

27.     Lennox denies the allegations set forth in paragraph 27 of the Complaint.

28.     Lennox denies the allegations set forth in paragraph 28 of the Complaint, and denies the "Wherefore" paragraph immediately following paragraph 28 of the Complaint.

29.     Any allegations not specifically admitted herein are denied, and strict proof thereof is demanded.

30.     Lennox denies that Plaintiff is entitled to trial by jury.

-6-

## **AFFIRMATIVE DEFENSES**

### **First Defense – Unenforceability of Liquidated Damages Clause**

Plaintiff's claim to recover for liquidated damages under the purported Employment Agreement is barred because the liquidated damages clause in the purported Employment Agreement is invalid and unenforceable.  Among other things, the liquidated damages provision bears no reasonable relationship to any actual damages and constitutes an illegal penalty.  It would award Plaintiff the full amount of his entire compensation due under the Employment Agreement had it been valid, and dutifully and fully performed by Plaintiff.  More specifically, the amount is equal to the term of employment (5 years) multiplied by his annual compensation ($1.2 Million).  Yet, 2.5 years of the purported term has already passed.  An award of $6 Million would be penal and, therefore, unenforceable.

### **Second Defense – Breach Of Fiduciary, Statutory  And Other Applicable Duties, Responsibilities And Obligations**

Plaintiff is precluded from any recovery because he breached his fiduciary and other duties, obligations and responsibilities owed to Lennox, acted in bad faith and committed acts of self-dealing.  It was for these reasons, among others, that Plaintiff was terminated for cause on June 22, 2020. Among other wrongful acts, Plaintiff converted or misappropriated substantial cash and other assets of Lennox for his personal use to the detriment of Lennox and its shareholders.  Plaintiff's breaches of fiduciary and other duties and wrongful acts of bad faith are more fully set forth in the Counterclaim below and incorporated herein by reference.  These acts bar Plaintiff from any recovery, and require Plaintiff to compensate Lennox for its losses.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

### Third Defense – Unclean Hands

Plaintiff's claim is barred under the doctrine of unclean hands; Plaintiff's specific self-dealing, misdeeds and other wrongful acts are set forth in detail in Lennox's Counterclaim below.  It was for these reasons that Plaintiff was terminated for cause. Among other wrongful acts, Plaintiff misappropriated and/or converted substantial cash and other assets of Lennox for his personal use to the detriment of Lennox and its shareholders.  Plaintiff's breaches of fiduciary duty and wrongful acts of bad faith are more fully set forth in the Counterclaim below and incorporated herein by reference. These breaches and acts bar Plaintiff from any recovery, and require Plaintiff to compensate Lennox for its losses.

### Fourth Defense – Unconscionability

Plaintiff is barred from any recovery, as the purported Employment Agreement is an unenforceable, void, or voidable instrument because it is unconscionable.  More specifically, through deceit and fraud as pled specifically below in Lennox's Counterclaim (which allegations are incorporated herein by reference), Lennox lacked a meaningful choice in signing the Employment Agreement, and the terms of the document unreasonably favor Plaintiff, including the penal liquidated damages clause, as well as the excessive salary that is utterly out of proportion with the services provided by Plaintiff.  The one-sided unconscionable Employment Agreement was designed by Plaintiff to benefit solely himself to the detriment of Lennox with respect to the business affairs of Lennox.   The terms of the Employment Agreement were unfair and unreasonable to Lennox, and Plaintiff had a conflict of interest in entering into such Employment Agreement, which was not authorized, approved or ratified by disinterested shareholders.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

### **Fifth Defense – Plaintiff's Termination was Justified and Proper**

Plaintiff's alleged damages were caused by his own actions and conduct, including, but not limited to, his misappropriation of Lennox's assets; failure to provide access to Lennox's information, books, and records to Lennox's shareholders, director, or officer as required by Florida law; and other breaches of fiduciary duty which resulted in his termination for cause on June 22, 2020.  As a result of Plaintiff's wrongful actions (more specifically described in Lennox's Counterclaim below and incorporated herein by reference), Lennox was justified in terminating Plaintiff.  Because Plaintiff's wrongful conduct was the reason for his termination, it would be inequitable and improper for him to benefit from his wrongful conduct by recovering unreasonable, excessive liquidated damages for his termination.

### **Sixth Defense – Failure to State a Claim**

The Complaint is subject to dismissal for failure to state a claim upon which relief can be granted.  Among other things, it is based solely upon an alleged Employment Agreement attached to the Complaint which is invalid and unenforceable.

### **Seventh Defense – Fraudulent Inducement**

As set forth with particularity in Lennox's Counterclaim below (which allegations are incorporated herein by reference), Plaintiff fraudulently induced Lennox into signing the purported Employment Agreement.  As such, the Employment Agreement is void and/or voidable and Plaintiff is barred from recovery thereunder.

### **Eighth Defense – Conditions Precedent**

Plaintiff has failed to satisfy or fulfill all conditions precedent to bring its action.  First, the Employment Agreement is void and/or voidable, and as a result, Plaintiff is not entitled to recover any sums thereunder.  Second, even if the Employment Agreement

were valid, the conditions for Plaintiff's recovery of liquidated damages thereunder have not been met.  Plaintiff was terminated for cause, and the liquidated damages provision only applies, if at all, if Plaintiff were terminated without cause.  Third, the liquidated damages clause is invalid and unenforceable because it is penal.  Fourth, before he was terminated for cause, Plaintiff first failed to fulfill his duties, obligations and responsibilities owed to Lennox under the Employment Agreement, and, therefore, he is not entitled to any recovery.

## Ninth Defense – Setoff

Any alleged damages of Plaintiff must be eliminated or reduced by a setoff of any and all damages incurred by Lennox as more fully alleged in its Counterclaim (which allegations are incorporated herein by reference).

Lennox is also entitled to a set-off for any employment compensation or other amounts Plaintiff received from a third party, receives or will receive from the date he was terminated through the end of the term of the purported Employment Agreement.

## Tenth Defense – Duty to Mitigate

Plaintiff is precluded from seeking the relief sought and/or Lennox is entitled to a set off because Plaintiff had a duty to mitigate his alleged damages and failed to properly do so.

## Eleventh Defense – No Meeting of the Minds

Plaintiff is precluded from recovery because there was no meeting of the minds of the parties on the essential terms of the agreement alleged by Plaintiff, including without limitation, the liquidated damages provision solely upon which Plaintiff's suit is based.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

## Twelfth Defense – Prior Breach

Plaintiff is precluded from recovering any amounts allegedly due under the purported Employment Agreement, because he *first* breached the purported Employment Agreement by, among other things, failing to dutifully fulfill his responsibilities thereunder, acting in self-dealing, acting in bad faith, breaching his fiduciary duties, and violating the law.

## Thirteenth Defense – Termination for Cause

Plaintiff is not entitled to recover any sums due under the Employment Agreement, because he was lawfully and properly terminated for cause.  Pursuant to the terms of the purported Employment Agreement, the amount sought by Plaintiff is only due, if at all, in the event Plaintiff were terminated without cause and he otherwise fulfilled his obligations under the Employment Agreement.  Here, Plaintiff failed to fulfill his obligations under the Employment Agreement and was terminated for cause.  As a result, Plaintiff is not entitled to any recovery.

## Fourteenth Defense – Unjust Enrichment

Plaintiff is not entitled to any recovery because, based upon his wrongful conduct as set forth in this pleading (which allegations are incorporated herein), he would be unjustly enriched if permitted to any further recovery.  Even absent any of his wrongful actions, the amount sought by Plaintiff is extraordinarily high and would be inequitable and would unjustly enrich Plaintiff.

## Fifteenth Defense – Conflict of Interest

Plaintiff is not entitled to any recovery because the Employment Agreement is void and/or voidable as it constitutes an impermissible director's and officer's conflict of

interest transaction as it is between Lennox and Plaintiff (an officer and director of Lennox at the time it was purportedly signed).

Lennox reserves the right to plead any and all defenses that are discovered or may become known during the course of discovery.

**WHEREFORE**, Lennox requests the entry of judgment in its favor, an award of its attorneys' fees incurred in defending against Plaintiff's claims pursuant to Fla. Stat. § 448.08, and for such other and further relief as this Court deems just and proper.

## COUNTERCLAIM

Defendant/Counter-Plaintiff LENNOX MIAMI CORP. ("Lennox") hereby sues Plaintiff/Counter-Defendant DIEGO AGNELLI ("Agnelli") for damages, injunctive and other relief, and states:

## INTRODUCTION

1.     Lennox brings this counterclaim to protect Lennox, its Hotel, and its shareholders from the brazen, unauthorized, tortious and illegal actions of Agnelli, who was terminated for cause from all of his employment and corporate positions with Lennox.

2.     As set forth more fully below, Lennox discovered that during Agnelli's approximately 9-year tenure as an officer and director of Lennox, Agnelli (without authorization or even knowledge of, Lennox's other shareholders, officer or director) embezzled from Lennox; misappropriated Lennox monies to pay for the construction and furnishing of his multi-million dollar home; misappropriated Lennox monies to pay for his lavish travels and personal lifestyle, and engaged in other acts of self-dealing to Lennox's detriment.   As of this date, Lennox has discovered that Agnelli misappropriated more than $2 Million from Lennox.

3.      Agnelli was removed as a director of Lennox on June 17, 2020 and terminated for cause from all of his employment positions with Lennox on June 22, 2020.

4.      But even after Agnelli's firing, his recalcitrance did not end.  After his termination, Agnelli illegally trespassed on the Hotel's property, raided and removed Lennox's books and records from the Hotel.  Even now, he still refuses to:  (a) return Lennox's books, records, and other property, and (b) grant Lennox access to its own bank account (he remains the only person with access to that account).

5.      As a result, Lennox is forced to file this action in order to stop Agnelli once and for all.  Lennox seeks the return of its books, records and other personal property wrongfully converted by Agnelli; to re-gain access to its bank account which Agnelli is holding hostage; to enjoin Agnelli from continuing to interfere with Lennox's hotel business; to rescind Agnelli's purported Employment Agreement, to recover the losses Lennox incurred by Agnelli's willful and wanton breaches of fiduciary duty, conversion and breach of contract and trespass; and to account to Lennox as to its finances.

## LENNOX AND ITS CORPORATE STRUCTURE

6.      Lennox owns the Lennox Hotel located on Collins Avenue and 19th Street, Miami Beach, Florida (the "Hotel" or the "Premises").  Invernorth is its 75% majority shareholder, Analia Castellanos is its 12.5% shareholder, and Agnelli is a 12.5% shareholder.

7.      On November 29, 2010, Castellanos purchased the Hotel through a corporate entity, Lennox.  On November 23, 2010, Castellanos gave 12.5% of Lennox's shares to his daughter, Analia, and 12.5% of Lennox's shares to his son-in-law, Agnelli.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

At the time, Castellanos, who owned the remaining 75% of Lennox's shares, was Lennox's Director and Vice President.

8.      As of December 2018, Castellanos (directly and/or indirectly) provided in excess of $59 Million to fund Lennox.  Despite this massive influx of funds, Agnelli's mismanagement caused the Hotel's remodeling to be delayed from 2013 until 2019.  At the time of his separation of employment, Agnelli left Lennox with depleted bank accounts, needlessly indebted in excess of $5.5 Million, failing to pay any dividend to its shareholders, missing books and records, and confronting various lawsuits from third parties caused by Agnelli's poor and failed management.

9.      On December 11, 2015, Castellanos transferred his ownership in Lennox (which comprised 75% of all Lennox shares) to Invernorth.  Castellanos is attorney-in-fact for, and authorized to act on behalf of, Invernorth.

10.     Agnelli is a former employee, officer and/or director of Lennox.  During his tenure as employee, officer and/or director, Agnelli engaged in unchecked self-dealing; pilfered company monies to pay for the construction and furnishing of his multi-million dollar house, his rent when he moved out of his house, personal trips, and other personal expenses; refused Lennox officers, directors or shareholders access to Lennox information, books, records and other property (including Lennox's bank account); violated the law; and otherwise failed to fulfill his responsibilities, duties and obligations.  After Lennox discovered Agnelli's wrongdoings, Lennox duly terminated Agnelli's employment for cause and removed him as a corporate director (he remains a minority shareholder).

11.     Notwithstanding his termination for cause, Agnelli brazenly continued to interfere with, and attempt to control, Lennox's business for his own personal benefit to

the serious, irreparable detriment of Lennox and its shareholders.  Approximately one week after his June 22, 2020, termination for cause, Agnelli (without notice to Lennox and against Lennox's express written instruction) returned to the Hotel, broke the lock on Lennox's management office (the "Offices"), trespassed into the Offices, and grabbed numerous corporate documents (including its financial books and records), computer, and other personal property belonging to Lennox. In connection therewith, Plaintiff surreptitiously accessed (or caused others to access) the Hotel's security video footage software and changed the password to such software in an attempt to conceal his unlawful activities.  Since then, Lennox has been unable to access such security video footage or provide it to the Miami Beach police.  The video footage, Lennox's other personal property taken by Agnelli on July 1, 2020, and Lennox's other personal property wrongfully taken by Agnelli before July 1, 2020 are collectively referred to herein as the "Property."

12.     Agnelli has also seriously, materially interfered with and impaired, and continues to interfere with and impair, the effective management and operation of the Hotel.

## JURISDICTION, VENUE AND PARTIES

13.     This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and for injunctive and other relief and is within the jurisdiction of this Court.  This Court has jurisdiction on the same grounds cited by Agnelli in his Complaint herein.

14.     Lennox is a Florida corporation, which at all times material to this action, maintained its principal place of business in Miami-Dade County, Florida.

15.     Agnelli claims to be a citizen of Argentina, over the age of 18 years, and otherwise *sui juris.*

16.     Venue is proper in this District. Agnelli has conducted substantial and not isolated business related to the matters alleged in the Counterclaim in Miami-Dade County, Florida, and the matters giving rise to the causes of action herein occurred and transpired within Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

### *Agnelli's Termination for Cause*

17.     In late 2019, Lennox began to uncover Agnelli's malfeasance.  Although Lennox continues to uncover the full extent of his acts, Lennox has already determined that Agnelli misappropriated more than $2 Million from Lennox.  Lennox also believes that when it recovers from Agnelli its missing books, records, and other financial documents and gains access to the bank account to which Agnelli is wrongfully denying Lennox access, Lennox will be able to establish that its total losses vastly exceed $2 Million.

18.     Thus far, Lennox has learned that Agnelli (without permission or even knowledge of the other officer, director or shareholders) misappropriated more than $1 Million to construct and furnish his primary residence.

19.     Lennox also learned that when Agnelli separated from his wife, he moved into an apartment in Key Biscayne, Florida for $11,500 per month and paid that rent with Lennox's monies.  It is known that from September 2018 until December 2019, Agnelli misappropriated approximately $184,000 of Lennox's funds to pay for his personal housing expenses.  It is also believed that Agnelli had Lennox continue to pay

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

his rent thereafter as well.  Agnelli had no right or authority to use Lennox's monies to pay his own rent.

20.     Agnelli also used Lennox's monies to pay for his own personal, daily living expenses, expenses that had no connection to Lennox.  Agnelli had no right or authority to use Lennox's monies for these purposes.

21.     Agnelli also used Lennox's monies to pay for his own personal trips and vacations, including ski trips to Vail, Colorado, an Ironman race in Panama, and a trip to Russia to attend the Soccer World Cup, which trips and vacations were unrelated to Lennox's business or activities.  Agnelli had no right or authority to use Lennox's monies for these purposes.

22.     Agnelli also submitted false expenditures to Lennox for reimbursement; expenses he never incurred in connection with his employment.

23.     Agnelli even had the temerity to divert Lennox monies by secretly opening a Lennox bank account (at least one) at Wells Fargo by misrepresenting to the bank that he was Lennox's *sole* shareholder or representative (the "Wells Fargo Account" or "the Account").  As of this date, still only he may access, control and use the Account and Lennox's funds in it.  Because of this misrepresentation and notwithstanding Agnelli's termination for cause, the bank will not grant Lennox access to its own Account, and Lennox today is unable even to determine the amount in the Account or any transactions run through the Account.

24.     In short, Agnelli used Lennox's monies as his own personal piggy bank to finance his housing costs, personal expenses, personal travels and lavish lifestyle.

25.     During the last 6 months-plus, Agnelli rebuffed all shareholder, director, and officer requests for information regarding Lennox's finances and copies of essential

Lennox documents (of which he was exclusively in control), in contravention of his duties as director and officer of Lennox and applicable Florida law. Despite repeated written requests, Agnelli provided nothing.  And, when the fact of his wrongdoing was discovered, he sought to confiscate from Lennox the evidence of his misdeeds. Now, despite having been terminated, Agnelli remains in possession of Lennox's books, records, financial information, and other property that he wrongfully converted.  He refuses to return Lennox's property.

26.     Due to Agnelli's willful misconduct, fraudulent and improper use of Lennox funds and resources, and his material breach of his duties, effective on June 17, 2020, Lennox shareholders removed Agnelli as director of Lennox.  On June 22, 2020, Lennox terminated Agnelli for cause from his position as president, chief executive officer and/or any other officer or employment or personnel position he may have held with Lennox, and relieved him of further authority to act on behalf of Lennox.  Lennox informed Agnelli of these actions in writing.  A true and correct copy of the termination letter (with English translation) is attached hereto and incorporated herein as Exhibit "A."

27.     As set forth in Exhibit "A," Agnelli was terminated for cause for his willful misconduct, fraudulent and improper use of Lennox funds and resources, and his material breach of his duties.

### *Agnelli's Post Termination Raid and Conversion of Lennox's Property*

28.     After Agnelli was removed from any and all positions with Lennox on June 22, 2020 and prohibited from entering the Premises, Lennox hired a security guard and changed the lock on the door to the Offices at the Premises, to ensure, *inter alia*, that Agnelli would not improperly enter those Offices and access company records.

29.     Notwithstanding his termination for cause and express instruction not to return to the Premises, Agnelli, through false pretenses (by misrepresenting to the Miami Beach Police Department that he was still the President of Lennox), returned to the Hotel on July 1, 2020, had the locks to the Offices removed (and then changed), entered the Offices and removed Lennox's books, records, documents and other personal property.   In planning to carry-out his raid, Agnelli hijacked Lennox's online account to its security video system.   Since then, Lennox has been unable to access its security video footage of the raid or provide it to the Miami Beach police.

30.     Agnelli has not returned the converted Property to Lennox, continuing to withhold it from Lennox.   Agnelli likewise maintains wrongful and exclusive control over Lennox's Account that he opened by misrepresenting that he was Lennox's sole shareholder or representative.

31.     Agnelli's wrongful actions are directly contrary to Lennox's interests and are interfering with Lennox's ability to manage and operate the business of the Hotel.

32.     All conditions precedent to the bringing of this action have been performed, have occurred or have been waived or excused.

33.      By reason of the wrongful acts and misconduct of Agnelli, described in this Complaint, Lennox has been forced to retain the services of undersigned counsel to represent it in this action and has agreed and is obligated to pay reasonable attorneys' fees for services rendered herein.   Additionally, as Agnelli has sought attorneys' fees under Section 448.08, Florida Statutes, Lennox is entitled and requests an award of attorneys' fees under said statute if it prevails with respect to the claim, or, alternatively, under the Employment Agreement if valid.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

## COUNT I - EMERGENCY INJUNCTIVE RELIEF

34.     Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

35.     This is an action by Lennox against Agnelli for temporary and permanent emergency injunctive relief and is within the jurisdiction of this Court.  Such relief is requested and required pursuant to Rule 65, Federal Rules of Civil Procedure, and statutory and common federal and Florida law.

36.     Without Lennox's permission, Agnelli wrongfully took possession of Lennox's Property and has also denied Lennox access to its Wells Fargo Account (the Property and the Wells Fargo Account are collectively referred to herein as the "Converted Property").

37.     Agnelli has no right to be in possession of, control, retain or even access the Converted Property.

38.     Lennox has a clear legal right and interest to possession and control over the Converted Property, to prevent the withholding of and/or unauthorized use of the Converted Property, and/or to prevent the unlawful disclosure to third parties of any of the contents of any of the documents comprising the Converted Property.

39.     Agnelli's retention and/or use of the Converted Property for his own benefit results in a present and continued danger that Agnelli will wrongfully use and/or transfer the Converted Property to third parties and/or will damage or destroy the Converted Property.  It denies Lennox its access to and use of the Converted Property.

40.     Additionally, Agnelli has seriously, materially interfered with and impaired, and continues to interfere with and impair, the effective management and operation of the Hotel. Agnelli has taken control of and withheld Lennox's documents and the

recording system and recordings from Lennox and its management company, caused serious disruption of and to the operations of the Hotel, and otherwise interfered with Lennox's and the management company's effective operation and management of the Hotel's business and daily operations.

41.     Agnelli's wrongful actions and interference are causing immediate and irreparable damage and harm to Lennox.  Lennox needs access to its books, records, financial information, bank accounts, and security video footage software and is without an adequate remedy at law as long as Agnelli withholds Lennox's Converted Property and other property.

42.     Because Agnelli has no legal right to the Converted Property, to damage or destroy the Converted Property of Lennox, to enter the Hotel for the purpose of accessing secured property of Lennox, or to assume or retain control of Lennox, the Hotel and/or the management company, and because those rights clearly and absolutely belong to Lennox, Lennox has demonstrated a substantial likelihood of success on the merits of this action.

43.     The entry of an injunction will not be contrary to the public interest, as Florida law protects the right of ownership, freedom from illegal entry to another's premises, freedom from accessing and converting another's property, and the right of a business to operate its business affairs without unlawful interference from others.  To the contrary, the entry of an injunction will promote the public interest to uphold these important rights, as well as prevent parties from damaging and converting property which does not belong to them and improperly interfering with the operation of others' business affairs.

44.    Lennox has no adequate remedy at law to address Agnelli's wrongs.  The equitable relief sought is the only remedy available to Lennox to address the wrongs described in this Count.

**WHEREFORE**, Lennox demands that this Court enter a temporary and permanent injunction against Agnelli, ordering him to:

(1)    Immediately return of all of Lennox's property, including without limitation the Converted Property, as well as provide an inventory of the Converted Property and other property taken from Lennox's Office;

(2)    Cease and desist from entering Lennox's Hotel or damaging or destroying any property of Lennox;

(3)    Cease and desist from acting in any capacity relating to Lennox other than shareholder;

(4)    Cease and desist from impairing and/or interfering with the operations and management of Lennox and the Hotel;

(5)    Notify and instruct any all banking institutions, including Wells Fargo, that Agnelli has no interest in, or authority with respect to, any accounts of Lennox and that Lennox's current officers and directors are the authorized representatives for any and all Lennox bank accounts; and take such actions as may be necessary to change the authorized representatives on such accounts to individuals designated by Lennox; and

(6)    Grant such further relief as it deems just and proper.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

## COUNT II – BREACH OF FIDUCIARY, STATUTORY  AND OTHER APPLICABLE DUTIES, RESPONSIBILITIES AND OBLIGATIONS

45.    Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

46.     At all material times, Agnelli owed fiduciary duties to Lennox.  As an officer, chief executive officer and/or a director, Agnelli owed a duty to act in good faith and in the best interests of Lennox.  At a minimum, he was required not to place his own personal interests ahead of Lennox's interests, and not to engage in acts of self-dealing or misuse corporate assets and funds.

47.    Although discovery herein is certain to reveal more information, as of the date of this filing, Lennox has discovered that Agnelli breached his fiduciary duties in at least the following ways:

(a)    misusing substantial Lennox monies to pay for, among other things, the construction of his multi-million residence; the furnishing of his residence; his rent when he moved out of his marital residence; his own personal expenses, his travel expenses; his daily living expenses and other expenses for which he had no right or authorization;

(b)    withholding from Lennox, as well as its shareholders and director, Lennox books, records, financial and other documents;

(c)    instructing the Hotel's management company to withhold documents and information from Lennox;

(d)    failing to inform Lennox, its other director and/or its shareholders regarding the affairs of Lennox within the scope of his functions;

(e)    converting Lennox's books, records, and other financial documents;

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

(f)     denying and/or impeding Lennox's access to its own monies by, among other maneuvers, secretly diverting Lennox monies to at least one known undisclosed Lennox bank account (the Wells Fargo Account) that was opened by misrepresenting to the bank that he is Lennox's sole shareholder and allowing no one else access to the Lennox's account;

(g)     submitting for reimbursement from Lennox false and/or fake business expenses, and obtaining payment therefrom;

(h)     engaging in self-dealing by hiding his financial interests in the restaurant on Lennox's premises; entering into transactions in which he had a conflict of interest; failing to protect Lennox's interest in negotiating and signing a lease with the restaurant that was not an arms' length transaction, and failing to enforce Lennox's rights under the lease;

(i)     deliberately and continuously ignoring his responsibilities to the Hotel and its management and operations;

(j)     entering into a purported Employment Agreement with unreasonable and unfair terms, which is a conflict of interest transaction that was not approved, authorized, or ratified by Lennox shareholders;

(k)     intentionally misrepresenting his stock ownership in Lennox to third parties, thereby exposing Lennox to potential civil and criminal liabilities; and

(l)     failing to fulfil his other duties, obligations and responsibilities as a director and officer.

48.     In short, Agnelli has converted Lennox's assets, wasted other Lennox assets, misappropriated Lennox monies, engaged in an overall scheme to misuse

Lennox's assets for his own personal use, engaged in self-dealing, and intentionally interfered with the effective management the Hotel.

49.     As a result of the foregoing, Lennox has suffered damages, and continues to suffer damages.

50.     Agnelli's conduct was in bad faith, willful, intentional, carefully planned out and deliberate.  And, when Agnelli's conduct came to light, he sought to conceal his wrongdoing by taking Lennox's books, records and documents, and security video footage, withholding those items from Lennox, and refusing to provide Lennox, its directors and shareholders any material information.

**WHEREFORE**, Lennox demands judgment against Agnelli for damages, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT III – CONVERSION

51.     Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

52.     Without Lennox's permission, Agnelli took possession of the Converted Property (as that term is defined above).

53.     Agnelli had no right to take or retain possession or control of the Converted Property.

54.     Lennox has an immediate right to the Converted Property.

55.     Lennox has made demand on Agnelli to return the Converted Property, but Agnelli refuses to do so.

56.     As a result of Agnelli's acts of conversion as described above, Lennox has suffered and will continue to suffer damages.

57.     Agnelli's conduct is intentional, carefully planned out and deliberate.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

**WHEREFORE,** Lennox demands judgment against Agnelli for damages, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV – TRESPASS

58.     Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

59.     At all times material, Lennox has been the owner and in possession of the Premises, including the Offices.

60.     On July 1, 2020 (more than a week after Lennox terminated him and instructed him not to return to the Premises), Agnelli returned to the Hotel, broke into Lennox's Offices, took Lennox's property from its Offices, changed the lock on Lennox's offices, and seized control of the video footage of his activities.

61.     Agnelli had no authority or other right to undertake any of these activities. In fact, Lennox had expressly instructed him in writing on June 22, 2020 *not* to return to the Premises.

62.     Agnelli, however, disregarded his termination for cause, Lennox's rights, its property interests and Lennox's business.   When he trespassed on Lennox's property to raid its Offices, Agnelli cared only about covering his tracks and taking Lennox's Property.   He knew that his wrongdoings had been discovered so he sought to do all he could to conceal his years of wrongdoing, even if that meant breaking into Lennox's Offices.

63.     As a result of Agnelli's wrongful acts as described above, Lennox has suffered and will continue to suffer damages.

64.     Agnelli's conduct is intentional, carefully planned out and deliberate.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

**WHEREFORE,** Lennox demands judgment against Agnelli for damages together with interest, costs, and such other relief as the Court deems just and proper.

<u>**COUNT V – FRAUDULENT INDUCEMENT**</u>

65.     Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

66.     In 2017, Agnelli represented to Lennox, through its vice president and Agnelli's father-in-law, Castellanos, that he needed Lennox to sign documentation written exclusively in the English language, for among other reasons, its needed submission to the City of Miami Beach.   Pursuant to information and belief, the documentation included a purported employment agreement written entirely in English (the "Employment Agreement").

67.     The Employment Agreement is the document upon which Agnelli brings his sole claim herein, a copy of which he attached to his Complaint as Exhibit A.  It was signed by Castellanos on behalf of Lennox as the Appointing Officer.

68.     The Employment Agreement is one-sided in favor of Agnelli; provides for an inordinate salary for Agnelli that is far from commensurate with the value of Agnelli's job responsibilities; contains a punitive liquidated damages penalty; and includes excessive vacation and no contractual responsibilities on Agnelli.

69.     To conceal these and other one-sided provisions from Castellanos, Agnelli misrepresented to Castellanos the document's nature, purpose, and content.

70.     Castellanos is an Argentine citizen, his native language is Spanish, he does not read, write or speak the English language, and Agnelli was fully aware of these facts.  As a result, when Agnelli asked Castellanos to sign the document, Castellanos asked Agnelli to explain the purpose, nature, and content of the document.  Had it not

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

been for Agnelli's misrepresentations as to the document's purpose, nature, and content Castellanos would not have signed the Employment Agreement.

71.     Moreover, in inducing Castellanos to sign the Employment Agreement on behalf of Lennox, Agnelli knew he was causing Lennox to enter into a transaction with Agnelli in which Agnelli had a conflict of interest, which conflict of interest was not approved, authorized, or ratified by the Lennox shareholders.

72.     Agnelli intentionally made his misrepresentations to Castellanos for the sole purpose of inducing him to sign the purported Employment Agreement.

73.     Agnelli's misrepresentations were false, and he knew them to be false at the time he made them to Castellanos.

74.     Because Agnelli was his son-in-law, director and president of Lennox, Castellanos trusted Agnelli to act truthfully and in the best interests of Lennox. Castellanos relied upon Agnelli to truthfully describe and translate the purpose, nature and content of the Employment Agreement.  Unfortunately, Agnelli did not so act.

75.      As a result of Agnelli's fraudulent misrepresentations, there was no meeting of the minds to create a binding employment agreement.  Further, Lennox has suffered damages as a result of Agnelli's fraud.

76.     Agnelli's conduct is intentional, carefully planned out and deliberate.

77.     Lennox has no adequate remedy at law to address Agnelli's wrongdoings. The equitable relief sought is the only remedy available to Lennox.

**WHEREFORE**, Lennox demands judgment against Agnelli for rescission of the Employment Agreement, and incidental damages relating thereto, and for such other relief as the Court deems just and proper.

## COUNT VI – RESCISSION OF THE EMPLOYMENT AGREEMENT ON THE GROUNDS THAT IT IS A VOID OR VOIDABLE DIRECTOR'S CONFLICT OF INTEREST TRANSACTION

78.     Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

79.     This Count also seeks to rescind the Employment Agreement on the grounds that it is a void or voidable director's conflict of interest transaction.

80.     Agnelli prepared the terms of the Employment Agreement without discussion or input from any other Lennox officer, director or shareholder.

81.     At the time he prepared and signed the Employment Agreement, Agnelli was a director and officer of Lennox, a party to the Employment Agreement and also secured for himself a direct material financial interest from (and in) the Employment Agreement, which financial interest was unfair and unreasonable to Lennox.

82.     This improper transaction was not fair to Lennox because, among other reasons: (a) Agnelli prepared it without knowledge or input from Lennox; (b) improperly induced Lennox to sign it; and (c) its terms are unduly one-sided in favor of Agnelli and not comparable to what he might have secured in an arm's length transaction with Lennox.

83.     Agnelli's conduct was intentional, carefully planned out and deliberate.

84.     Lennox has no adequate remedy at law to address Agnelli's wrongs.  The equitable relief sought is the only remedy available to Lennox for the misconduct alleged in this count.

85.     Based on this conflict of interest, the Employment Agreement is unenforceable, void, voidable and subject to rescission.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

**WHEREFORE**, Lennox demands judgment against Agnelli for rescission of the Employment Agreement, incidental damages relating thereto, and for such other relief as the Court deems just and proper.

## COUNT VII – UNJUST ENRICHMENT

86.     Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

87.     Lennox conferred a benefit upon Agnelli by faithfully and diligently providing him with control of and access to Lennox's resources, including the actual payment and receipt of compensation.

88.     Agnelli had knowledge of the benefits that Lennox conferred on him because he accepted control of and access to Lennox's resources, as well as paid himself an exorbitant salary and other benefits in excess of $1.2 Million per year pursuant to the Employment Agreement.

89.     Agnelli knowingly and voluntarily accepted and retained the benefit of Lennox's resources,  including the payment to himself of an exorbitant salary and other benefits in excess of $1.2 Million per year pursuant to the Employment Agreement.

90.     Agnelli took advantage of Lennox by paying himself an exorbitant salary and other benefits in excess of $1.2 Million per year.

91.     In accepting an exorbitant salary and other benefits, Agnelli knowingly and voluntarily kept and appreciated the benefits conferred, and has been unjustly enriched.

92.     The circumstances render Agnelli's retention of the benefit inequitable unless he pays to Lennox the value of the benefits that he appropriated for himself.

**WHEREFORE,** Lennox demands judgment against Agnelli for damages together with interest, costs, and such other relief as the Court deems just and proper.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

## COUNT VIII – ACCOUNTING

93.     Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

94.     As director of Lennox from 2010 to June 17, 2020, and as president of Lennox from 2010 to June, 22, 2020, Agnelli had exclusive custody and control over all of Lennox's finances, books, records, other official corporate documents, and bank accounts and owed fiduciary duties to Lennox.

95.     When Lennox discovered that Agnelli had misused Lennox's monies, treated the company as his own personal piggy bank, and breached his fiduciary duties, Lennox requested information and documents regarding Lennox and its finances.  At that time, he had exercised sole control over Lennox's management, books and records.

96.     In his ongoing efforts to conceal his wrongdoings, Agnelli has refused to provide Lennox, its directors and shareholders access to its own books, records, financial information, and even bank accounts.

97.     Lennox is in immediate need of its books, records, financial information and bank accounts so that, among other things, it may operate its Hotel.

98.     As an existing minority shareholder, an ex-employee, ex-officer and ex-director and the only person with access to and possession of Lennox's information, documents and computers, Agnelli has an obligation to return Lennox's property and provide Lennox with an accounting of the financial transactions he oversaw, managed, and engaged in during his tenure.

99.     Lennox has demanded an accounting, and said demand has been refused.

-31-

100.   Lennox does not have an adequate remedy, other than an equitable accounting, through which to gain for itself, a comprehensive understanding of the profits and distributions of Lennox, as well as all corporate assets improperly diverted by Agnelli.

**WHEREFORE**, Lennox demands judgment against Agnelli requiring him to render a full and complete accounting to Lennox of the finances of Lennox, including but not limited to all funds received by Agnelli and/or used by Agnelli for personal purposes, together with court costs and such other relief as the Court deems just and proper.

## COUNT IX –BREACH OF CONTRACT

101.   Lennox realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as if fully set forth herein.

102.   This Count is plead in the alternative to Counts V and VI.

103.   As president and director of Lennox from 2010 to June, 22, 2020, Agnelli had exclusive custody and control over all of Lennox's finances, books, records, other official corporate documents, and bank accounts and owed fiduciary duties to Lennox.

104.   Pursuant to the Employment Agreement, Agnelli agreed to perform his duties in good faith, in a manner for the benefit of Lennox and to avoid self-dealing.

105.   Agnelli breached the Employment Agreement by failing to perform his duties under the Employment Agreement, misusing Lennox's monies, treating the company as his own personal piggy bank, engaging in self-dealing, and breaching his fiduciary and other duties and other responsibilities and obligations owed to Lennox.

106.   Agnelli also breached the Employment Agreement by (i) engaging in gross negligence or willful misconduct in connection with the performance of his duties; (ii) willfully refusing to perform any of his duties or responsibilities required pursuant to the

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

Employment Agreement; (iii) engaging in fraud, criminal conduct including, but not limited to, crimes of moral turpitude, dishonesty or embezzlement; and (iv) misappropriation for personal use of assets or business opportunities of Lennox.

107.    As the direct result of Agnelli's actions, Lennox has sustained damages.

**WHEREFORE,** Lennox demands judgment against Agnelli for damages together with interest, costs, and such other relief as the Court deems just and proper.

Dated: July 31, 2020.

**SHUTTS & BOWEN LLP**
Attorneys for Lennox
200 S. Biscayne Blvd.
Suite 4100
Miami, Florida 33131
(305) 358-6300
gtravis@shutts.com
rllorens@shutts.com
dkramer@shutts.com
pbrugger@shutts.com)

By: _s/ Rene Gonzalez-LLorens_
    Geoffrey L. Travis
    Florida Bar No. 988812
    Rene Gonzalez-LLorens
    Florida Bar No. 53790
    Douglas M. Kramer
    Florida Bar No. 243086
    Patrick G. Brugger
    Florida Bar No. 035418

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 31, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, who will send a notice of electronic filing to :

> Jesus E. Cuza, Esq.
> Brian H. Koch, Esq.
> Rebecca Canamero, Esq.
> Annelise Del Rivero, Esq.
> Holland & Knight LLP
> 701 Brickell Avenue, Suite 3000
> Miami, Florida 33131
> Telephone: (305) 374-8500
> Fax: (305) 789-7799
> Email: Jesus.Cuza@hklaw.com
> Email: Brian.Koch@ hklaw.com
> Email: Rebecca.Canamero@ hklaw.com
> Email: Annelise.Delrivero@hklaw.com
> Attorneys for Plaintiff/Counter-Defendant


> *s/ Rene Gonzalez-LLorens*
> Rene Gonzalez-LLorens

MIADOCS 20597371 1

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH