United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Diego Agnelli, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-22800-Civ-Scola |
| | ) |
| Lennox Miami Corp., Defendant. | ) |

**Order Granting in Part and Denying in Part
the Defendant's Motion for Summary Judgment**

  This matter is before the Court on Defendant Lennox Miami Corp.'s ("Lennox") motion for summary judgment. (Mot., ECF No. 48.) Plaintiff Diego Agnelli filed a response (Resp. in Opp'n, ECF No. 56) and Lennox replied. (Reply, ECF No. 61.) After careful consideration of the parties' arguments, the relevant legal authorities, and the record, the Court **grants in part and denies in part** Lennox's motion for summary judgment. **(Mot., ECF No. 48.)**

  1. **Background**

  This matter arises from a failed business relationship between Agnelli and Juan Castellanos, Agnelli's father-in-law. Agnelli married into the wealthy Castellanos family over twenty years ago. (Pl. Statement of Facts, ECF No. 55 at ¶ 75.) After his marriage to Analia Agnelli, Agnelli began working for the Castellanos family enterprise, including overseeing the construction and management of various hotels. (Pl. Statement of Facts, ECF No. 55 at ¶ 77.) Castellanos customarily financially supported his children and their spouses, including the Agnellis. (Pl. Statement of Facts, ECF No. 55 at ¶ 74.)

  Castellanos was the majority stakeholder in Lennox, and Agnelli owned a minority of shares. (Def. Statement of Facts, ECF No. 47 at ¶ 2); (Pl. Statement of Facts, ECF No. 55 at ¶ 2.) They were the sole stakeholders and served as Directors and Presidents of the company. *Id.* On November 29, 2010, Lennox purchased the Lennox Hotel in Miami Beach, Florida. (Def. Statement of Facts, ECF No. 47 at ¶ 1); (Pl. Statement of Facts, ECF No. 55 at ¶ 1.) Sometime thereafter, Lennox began a process of remodeling the Lennox Hotel. (Def. Statement of Facts, ECF No. 47 at ¶ 5); (Pl. Statement of Facts, ECF No. 55 at ¶ 5.) Agnelli was the sole supervisor of the project and of the hotel's day-to-day operations. (Def. Statement of Facts, ECF No. 47 at ¶ 8); (Pl. Statement of Facts, ECF No. 55 at ¶ 8.) Agnelli also managed Lennox's daily activities and had authority to spend funds in Lennox's business accounts, including the

wages and payments made to its employees (including his own salary). (Def. Statement of Facts, ECF No. 47 at ¶¶ 9, 10); (Pl. Statement of Facts, ECF No. 55 at ¶¶ 9, 10.)

In December 2017, Lennox and Agnelli entered into an employment agreement in which Lennox promised to employee Agnelli for a term of five years beginning on January 1, 2018. (Employment Agreement, ECF No. 9-1.) The agreement increased Agnelli's salary to $1,200,000 and allotted him nine weeks of paid vacation. (Def. Statement of Facts, ECF No. 47 at ¶ 16); (Pl. Statement of Facts, ECF No. 55 at ¶ 16.) Section 2(a) of the employment agreement permitted termination of the agreement *for* cause. Section 2(b) of the employment agreement allowed termination of the agreement *without* cause upon written notice to the other party. Additionally, the parties agreed that "in the event of any breach of the obligations and responsibilities set forth in this Section 2(b), the Company shall pay the Employee USD $6 Million, which amount reflects five (5) years of Employee's salary, as Liquidated Damages." (*Id.*)

In 2018, Agnelli separated from his wife, Castellanos's daughter. (Pl. Statement of Facts, ECF No. 55 at ¶ 106.) After their separation, the relationship between Castellanos and Agnelli soured. Castellanos retained forensic accountants and attorneys to investigate Lennox's financial condition and Agnelli's management of Lennox. (Def. Statement of Facts, ECF No. 47 at ¶ 24); (Pl. Statement of Facts, ECF No. 55 at ¶ 24.) Agnelli believes that Castellanos initiated the investigation to oust him from his position at Lennox and Lennox Miami. (Pl. Statement of Facts, ECF No. 55 at ¶¶ 24, 108.)

The forensic investigation revealed that Agnelli had used Lennox funds to pay for hundreds of thousands of dollars' worth of personal expenses. (Def. Statement of Facts, ECF No. 47 at ¶¶ 27-32.) For example, Agnelli used Lennox funds to pay for construction of his personal residence in Coral Gables and furniture for that home. (*Id.*) After his separation from his wife, Agnelli used Lennox funds to rent a luxury apartment in Key Biscayne, Florida. (*Id.*) Additionally, Agnelli paid himself more than the employment contract allowed. (Def. Statement of Facts, ECF No. 47 at ¶ 32); (Pl. Statement of Facts, ECF No. 55 at ¶ 32.) On June 22, 2020, Lennox terminated Agnelli and informed him of his termination through a written letter. (Def. Statement of Facts, ECF No. 47 at ¶ 47); (Pl. Statement of Facts, ECF No. 55 at ¶ 47.) Castellanos removed Agnelli as a director of Lennox. (Def. Statement of Facts, ECF No. 47 at ¶ 46); (Pl. Statement of Facts, ECF No. 55 at ¶ 46.)

Agnelli initiated this action against Lennox for a breach of the employment contract and for a judicial dissolution of Lennox. Agnelli alleges that Lennox breached the employment contract by terminating the contract

and his employment without cause and failing to pay him the $6 million liquidated damages as required under the contract. Agnelli hotly disputes that he was fired with cause.

## 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

## 3. Analysis

The issues in this case are whether Lennox materially breached the employment agreement when it terminated Agnelli before the end of the contractual employment term. And if so, is Agnelli entitled to recover the full $6 million in liquidated damages.

In its motion for summary judgment, Lennox contends that it did not breach the employment contract. First, Lennox argues that Agnelli was terminated for cause under Section 2(a) after it was discovered that he

misappropriated corporate funds. Alternatively, Lennox contends that even if it terminated Agnelli without cause, Lennox provided the requisite notice and thus Section 2(b) does not require to pay Agnelli liquidated damages. Lastly, Lennox argues that even if it did breach the contract, it is not obligated to pay Agnelli $6 million because the liquidated damages clause in Section 2(b) is unenforceable.

The motion is **granted in part and denied in part**. The Court finds that there remains a genuine issue of fact regarding whether there was a breach of the employment agreement. However, the Court agrees with Lennox that the liquidated damages clause is an unenforceable penalty.

### A. Contract Interpretation

Contract interpretation is "a question of law" to be decided by the court "by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Feaz v. Wells Fargo Bank, N.A.,* 745 F.2d 1098, 1104 (11th Cir. 2014). The employment contract here provides that it will be interpreted and construed in accordance with Florida law. (Employment Agreement, ECF No. 9-1.) "Under Florida law, if the terms of [a contract] are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). If the contract is unambiguous, it must be interpreted in accordance with its plain meaning so as to give effect to the contract as a whole. *Disa v. Ashley Furniture Indus., Inc.*, 131 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015) (Whittemore, J.) (citing *Wash. Nat'l Ins. Corp. v. Ruderman,* 117 So.3d 943, 948 (Fla.2013)). If possible, conflicting provisions of a contract are to be read in such a way to give a reasonable interpretation and effect to all provisions of the contract. *Id.* (citing *Cont'l Ins. Co. v. Collinsworth, 898* So.2d 1085, 1087 (Fla. 5th DCA 2005)); *see also Ferox, LLC v. ConSeal Int'l, Inc.,* 175 F. Supp. 3d 1363, 1373 (S.D. Fla. 2016) (Gayles, J.) (citing *Feaz,* 745 F.3d at 1104 (recognizing that "the terms of a contract must be interpreted in the context of the entire contract.")).

### B. Section 2(a)—Termination For Cause

In its motion, Lennox argues that Agnelli violated the terms of the employment contract by misappropriating Lennox funds for his personal use. (Mot., ECF No. 48 at 9.) Thus, Lennox had cause to terminate Agnelli. (*Id.*) In response, Agnelli argues that Castellanos and Lennox were fully aware of his use of Lennox funds and that it had been consistent with the parties' course of dealings for several years. (Resp. in Opp'n, ECF No. 56 at 8-9.) Therefore,

Agnelli avers, Lennox terminated his employment without cause and failed to pay him the agreed upon penalty. (*Id.*) At minimum, Agnelli argues, the trier of fact must decide the issue of whether Lennox had cause to terminate Agnelli.

Here, the parties agree that Section 2(a) is unambiguous. Section 2(a) of the employment agreement states:

> This Agreement may be terminated at the Company's option, immediately upon notice to the Employee, upon: (i) material breach by the Employee of any provision of this Agreement; (ii) gross negligence or willful misconduct of the Employee in connection with the performance of his duties under this Agreement. . . (iii) fraud, criminal conduct including, but not limited to, crimes of moral turpitude, dishonesty or embezzlement by the Employee; or (iv) the Employee's misappropriation for personal use of assets or business opportunities of the Company ("Cause"). If this Agreement is terminated by the Company for Cause, then the Employee shall (i) be entitled to receive only accrued compensation through the date of such termination; and (ii) immediately relinquish, forfeit, and surrender any rights to receive any other benefits from the Company following the effective date of such termination for Cause.

(Employment Agreement, ECF No. 9-1.)

The plain language of the employment agreement establishes that the meaning of "Cause" entails the misappropriation of funds. Misappropriation is not defined in the employment agreement and the parties agree that the Court must give the term its plain and ordinary meaning. Misappropriation constitutes "the application of another's property or money dishonestly to one's own use." Black's Law Dictionary (11th ed. 2019). Thus, the first issue before the Court is whether Lennox's actions constitute misappropriation of funds.

Lennox has shown that Agnelli used Lennox funds for personal use. Indeed, Agnelli does not dispute this fact. (Agnelli Dep., ECF No.45-2 at 206:13-207:14.) Lennox attempts to show that Agnelli's use of Lennox funds was unauthorized through Castellano's declaration and deposition testimony. Castellano denies granting Agnelli permission to use company funds for personal use and attests that Agnelli did not disclose those payments to Castellanos. (Castellanos Decl., ECF No. 46-1 at ¶ 34) (Castellanos Dep., ECF No. 44-1 at 133:16-134:8.) Castellanos also claims that Agnelli did not disclose that he was using corporate funds to pay for personal expenses. *Id.*

On the other hand, Agnelli claims that Castellano, and thereby Lennox, were aware that Agnelli was using Lennox funds for personal matters. (Agnelli Decl., ECF No.55-1.) In support of this position, Agnelli offers very limited evidence. First, Agnelli advances his own sworn declaration, in which he

declares that he has been working for Castellanos, his father-in-law, for over twenty years. (*Id.* at ¶ 2.) During those twenty years, Castellanos financially supported Agnelli and his wife by paying for housing, cars, travels, and other luxuries. (*Id.* at ¶ 12.) After his marriage to Castellanos's daughter, Agnelli began managing all of Castellanos's businesses, including Lennox and the Lennox Hotel Miami. (*Id.* at ¶¶ 16, 19, 64.) Agnelli was also granted authority to manage the Castellanos family's funds, including Lennox funds. (*Id.* at ¶ 23.) Over the years, Castellanos allowed Agnelli to use company funds from any of the family businesses. (*Id.* at ¶¶ 33-35.) Castellanos knew of this pattern. (*Id.* at ¶ 36.) It was only after Agnelli's divorce from Castellanos's daughter that Castellano began trying to oust him from Lennox and claiming no knowledge of Agnelli's use of company funds. The affidavit does not cite to any evidence supporting the statements therein.

Agnelli supports his version of events by citing to the deposition testimony of Elizabeth Bermudez, a Lennox employee, that Lennox "was a vehicle to pay for the expenses for the family enterprise," and that was the case for at least seven years. (Elizabeth Bermudez Dep., ECF No. 55-2 at 274:2–11.) Additionally, Agnelli also points to evidence that his personal expenses for furnishings and other physical goods were accounted for in Lennox's books and consistent with the family's dealings. (Agnelli Dep., ECF No. 45-2 at 207:4-210:11.)

Looking at the evidence in the light most favorable to Agnelli, the Court finds that the propriety of Agnelli's expenditures is an issue of fact that should be decided by the trier of fact. Accordingly, the motion for summary judgment is denied on this ground. *Brown Jordan Int'l Inc. v. Carmicle*, No. 0:14-CV-60629, 2015 WL 5915764, at *3 (S.D. Fla. Oct. 9, 2015) (Rosenberg, J.) (finding an issue of fact regarding the impropriety of employee's use of company funds because there was evidence that the employee did not attempt to conceal his actions).

### C. Section 2(b)—Termination Without Cause

Lennox argues, in the alternative, that even if it terminated Agnelli without cause, it is entitled to summary judgment on Agnelli's breach of contract claim. Lennox contends that Section 2(b)'s liquidated damages provision is only triggered if Lennox terminates Agnelli before his term *and* fails to provide written notice. Because it is undisputed that Lennox provided Agnelli written notice of his termination, Lennox reasons that it did not breach the employment agreement.

Section 2 of the employment agreement states:
The Employment Term and the Employee's employment hereunder may

be terminated by either the Company or the Employee at any time and for any reason; provided that, unless otherwise provided herein, either party shall be required to give the other party at least fifteen (15) calendar days advance written notice of any termination of the Employee's employment. <u>Upon termination of the Employee's employment during the Employment Term, the Employee shall be entitled to the compensation and benefits described in Section 2</u>.

[…]

(b) <u>Termination without Cause</u>:

This Agreement may be terminated without Cause by the Company or the Employee, at any time upon giving written notice to the other party of such termination. If the Company terminates this Agreement without Cause, the Parties acknowledge that the actual damages likely to result from breach of this Agreement are difficult to estimate on the date of this Agreement, and would be difficult for the Parties to prove. Accordingly, the Parties agree that in the event of any breach of the obligations and responsibilities set forth in this Section 2(b), the Company shall pay the Employee USD $6 Million, which amount reflects five (5) years of Employee's salary, as Liquidated Damages (the "Liquidated Damages Amount"). <u>The parties intend that Company's payment of the Liquidated Damages Amount would serve to compensate the Employee for any breach by the Company of its obligations under this Agreement</u>.

(Employment Agreement, ECF No. 9-1) (emphasis added).

The parties' offer two competing interpretations of Section 2(b)—only one of which is reasonable and consistent with the contract as a whole. Lennox interprets Section 2(b) to require liquidated damages only in the event that Lennox terminates Agnelli without cause and fails to provide written notice. Lennox reasons that even if it terminated Agnelli without cause, it is not required to pay him liquidated damages because it provided Agnelli written notice of his termination. (Mot., ECF No. 48 at 14.) Lennox's argument hinges on the provision that conditions liquidated damages on "any breach of the obligations and responsibilities set forth in this <u>Section 2(b)</u>," as opposed to a breach of the contract as a whole.

This interpretation is not reasonable and conflicts with other sections of the employment agreement such that those sections are rendered meaningless. *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367 (11th Cir. 2018) (recognizing that the Court's "duty is to interpret the contract as a whole, not each term in a vacuum"). As Agnelli notes, it is apparent from the contract as a whole that the parties intended that Agnelli receive some compensation if Lennox breaks its promise to employee him for the term of the contract.

Indeed, Section 2 states "Upon termination of the Employee's employment during the Employment Term, the Employee shall be entitled to the compensation and benefits described in Section 2." Section 2(b) reiterates the parties' intention that Agnelli be compensated if he is terminated without cause and Lennox breaches any part of the agreement, including the term of employment. In sum, Lennox has not advanced *any* case law or facts that support its narrow interpretation of Section 2(b) or to refute Agnelli's reasonable interpretation of the employment agreement.

Accordingly, the Court finds as a matter of law that liability for termination without cause in Section 2(b) cannot be avoided solely by providing written notice. *See Ferox, LLC*, 175 F. Supp. 3d at 1374 (denying motion for summary judgment because the movant's proposed contractual interpretation rendered portions of the contract meaningless); *see also Z Indus. USA, LLC v. Circuitronix, LLC*, No. 0:17-CV-60727-UU, 2018 WL 3412854, at *8 (S.D. Fla. June 20, 2018) (Ungaro, J.) (denying motion for summary judgment on breach of contract claim because the defendant's interpretation of one clause in the contract would render another clause meaningless); *BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012) ("where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner.").

### D. Liquidated Damages Clause is Unenforceable

Lennox argues that if the Court finds that it breached the employment contract, the liquidated damages clause is unenforceable, and Lennox does not owe Agnelli $6 million.

It is well settled that in Florida the parties to a contract may stipulate in advance to an amount to be paid or retained as liquidated damages in the event of a breach. *Underwriters at Lloyds v. FedEx Freight Sys., Inc.*, No. 8:07-CV-212-T-EAJ, 2008 WL 2901049, at *10 (M.D. Fla. July 23, 2008) (Jenkins, J.). Under Florida law, a liquidated-damages clause is enforceable only if two conditions are satisfied. First, at the time the parties executed their contract, the actual damages that would follow from a breach must not have been readily ascertainable. *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1306 (11th Cir. 2021). "And second, the stipulated damages must not be so grossly disproportionate to any damages that might have reasonably been expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages." *Id.* (internal quotations removed). "If it is unclear whether a provision for payment of an arbitrary sum" is a penalty or genuine liquidated

genuine damages, then Florida courts tend to construe the provision as an unenforceable penalty." *Id.*

Here, the parties agreed that "[i]f the Company terminates this Agreement without Cause, the Parties acknowledge that the actual damages likely to result from breach of this Agreement are difficult to estimate on the date of this Agreement." (Employment Agreement, ECF No. 9-1.) "Accordingly, the Parties agree that in the event of any breach . . . the Company shall pay the Employee USD $6 Million, which amount reflects five (5) years of Employee's salary, as Liquidated Damages." (*Id.*)

The Court finds that the liquidated-damages clause is unenforceable. First, at the time the parties executed the contract, the actual damages that flow from a breach were readily ascertainable. Indeed, in Section 2(a), the parties contemplate paying Agnelli "only accrued compensation through the date of such termination [for cause]." (Employment Agreement, ECF No. 9-1.) It follows that a similar calculation would apply if Agnelli were terminated without cause under Section 2(b).

Second, the liquidated-damages provision is disproportional to the damages that could have reasonably been expected at the point of termination. *Circuitronix, LLC*, 993 F.3d at 1306; *Underwriters at Lloyds v. FedEx Freight Sys., Inc.*, No. 8:07-CV-212-T-EAJ, 2008 WL 2901049, at *11 (M.D. Fla. July 23, 2008) (Jenkins, J.) (recognizing that "liquidated damages may or may not precisely compensate for the actual breach, so long as the disparity between the liquidated damages sum and the damages amount that contract law would normally allow is not so great as to compensate minimal damages with substantial sums."); *see also Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1351 (11th Cir. 2000) ("Parties may not use [liquidated damages] provisions as a way to secure for themselves greater damages in the event of a breach than contract law would normally allow."). Here, the parties set liquidated damages at $6 million, the entire value of the employment contract, regardless of when the contract was breached. In other words, the liquidated-damages clause in the subject employment contract would award Agnelli the full value of the contract even if he were terminated with one day left in his term. Such a liquidated clause indicates the parties intended only to induce full performance under the contract and is precisely the kind of clause that has been deemed unenforceable. *Compare Circuitronix, LLC,* 993 F.3d at 1306 (holding liquidated damages clause was unenforceable because the sum of the damages significantly exceeded actual damages that may have been expected from a breach during the contract term) *with Doc's Junkie Musick, Inc. v. Active Alarms, Inc.,* 545 So.2d 500, 501 (Fla. 4th DCA 1989) (upholding a liquidated damages clause where upon breach, the entire <u>remaining balance</u> of the

contract price was immediately payable to the non-breaching party). Nor can the Court ascertain the value, if any, of Agnelli's good will and efforts in furtherance of the Castellanos enterprises. *Circuitronix, LLC*, 993 F.3d at 1306.

However, simply because Agnelli is not entitled to $6 million in liquidated damages does not mean that he would not be entitled to an award of actual damages if Lennox breached the employment contract. *Goldblatt v. C.P. Motion, Inc.*, 77 So. 3d 798, 801 (Fla. 3rd DCA 2011) (recognizing that "where a court finds that the provision is a penalty, the plaintiff may only recover the actual damages pled and proven at trial."). The issues of whether there was a breach of the employment contract and the damages stemming therefore remain to be decided by the trier of fact.

### 4. Conclusion

For these reasons, Lennox's motion for summary judgment is **granted in part and denied in part. (Mot., ECF No. 48.)**

**Done and ordered**, in chambers in Miami, Florida on February 11, 2022.

_____
Robert N. Scola, Jr.
United States District Judge