IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:20-cv-22800-RNS

DIEGO AGNELLI,

    Plaintiff,

v.

LENNOX MIAMI CORP.,

    Defendant.

_____/

**JOINT PRETRIAL STIPULATION**

Plaintiff, Diego Agnelli ("Agnelli" or "Plaintiff"), and Defendant, Lennox Miami Corp. ("Lennox" or "Defendant") (collectively, the "Parties"), pursuant to the Court's Amended Scheduling Order [ECF No. 62] and S.D. Fla. L.R. 16.1(e), submit this Joint Pretrial Stipulation and state as follows:

**I.   A short concise statement of the case by each party in the action**

    A.  *Plaintiff's Statement of the Case*

This case is about a business "divorce" resulting from Agnelli's divorce from his wife, Analia Castellanos ("Analia"). Lennox Miami Corp. ("Lennox") owns the Lennox Hotel in Miami Beach (the "Hotel") and is family-run entity owned by Agnelli, Analia, and her father, Juan Castellanos ("Castellanos").[1] As Lennox's President and CEO, Agnelli built the Hotel from the ground up and oversaw its operations. Under Agnelli's leadership, the Hotel became very successful, reaching the number one spot on TripAdvisor in the competitive Miami Beach market.

---

[1] In 2015 Castellanos transferred his 75% personal interest in Lennox Miami Corp. to an entity controlled by him and owned in turn by a family trust of which Castellanos is the settlor and Trust Advisor. Analia and Agnelli own the other 25% of shares of Lennox (125 shares each).

**Unknown**

In late 2019 and early 2020, everything changed. Agnelli and Analia's marriage fell apart, and Analia's father, Castellanos (who controls the majority of shares of Lennox), began a campaign to punish Agnelli and oust him from the family business to which Agnelli had dedicated his professional life for close to 20 years. After strategically waiting for Agnelli to finish building the Hotel, Castellanos caused Lennox to terminate Agnelli without cause or justification and in retribution for Agnelli's impending divorce from Analia.

Agnelli ran Lennox for the benefit of the Castellanos family, just as he had run *all* of the Castellanos family businesses for nearly 20 years. Now, after almost two decades of operating as father-and-son at the helm of a family business, Castellanos changed the rules and reneged on the commercial arrangement and course of dealing that had always existed among the family. Feigning surprise and disapproval of conduct he knew about and agreed to for years, Castellanos launched a sham "investigation" and used its findings as a pretext to remove Agnelli from the business and terminate him as punishment for divorcing his daughter.

Agnelli initiated the instant action against Lennox for (1) breach of contract for failure to pay him the damages he is rightfully owed under his Employment Agreement with Lennox (Count I) and (2) judicial dissolution of Lennox Miami Corp. under Fla. Stat. § 607.1430 (Count II).

As to Count I, Agnelli claims that Lennox terminated him without cause from his position as President of the Hotel in breach of the Employment Agreement and, as a result, is contractually obligated to pay Agnelli liquidated damages due and owing under section 2 of the Employment Agreement. Lennox has raised a series of affirmative defenses to Agnelli's breach claim, essentially arguing that Agnelli misappropriated company funds and engaged in other wrongdoing and was terminated for cause. During trial, Agnelli will prove that he did not "misappropriate" Lennox funds, which he had complete authority to control, and use, as he had been doing for almost

20 years as the person in charge of operating *all* of the Castellanos family businesses, among other things (i.e., Castellanos' personal assets) for the family's benefit. Agnelli's use of company funds for family expenses from Lennox was no different to the entire Castellanos family's use of company funds from any number of the different family businesses, a pattern and practice they had been engaged in for nearly twenty years. Most of the complained of expenses were for the benefit of Analia, Castellanos' daughter. Agnelli did nothing more than what he had been doing for the last twenty years with Castellanos' knowledge and acquiescence. The only change in circumstance was the divorce, and Castellanos' quest to punish Agnelli and renege on their longstanding commercial arrangement.

As to Count II, Lennox elected to purchase Agnelli's 125 shares of Lennox in lieu of dissolution under Fla. Stat. § 607.1436. *See* Lennox's Notice of Election [ECF No. 17]. Because the Parties were unable to agree on a fair value amount for Agnelli's shares, the issue will be decided by the Court. *See* Fla. Stat. § 607.1436 ("the court … shall, whether or not the proceeding is stayed, determine the fair value of the petitioner's shares as of the day before the date on which the petition under s. 607.1430 was filed or as of such other date as the court deems appropriate under the circumstances.").

**B.      Lennox's Statement of the Case**

Plaintiff's assertion that this dispute is over a business divorce is a ruse. Agnelli was the president, a director and a minority shareholder, who was terminated for cause from his employment at Lennox due to the fact that he misappropriated millions of dollars, mismanaged Lennox's operations and engaged in numerous other brazenly wrongful activities for personal self-gain, all contrary to his duties, obligations and responsibilities to Lennox and its shareholders.

After Agnelli's termination, he engaged in a litigation campaign having initiated five (5)

separate lawsuits. Agnelli only conflates business and personal matters when it suits him, using corporate formalities as both a sword and a shield. Because Lennox terminated Agnelli for cause, he is not entitled to any recovery under his employment claim. To the contrary, he is liable to Lennox for millions of dollars of damages.

### 1. Agnelli's Claim for Breach of the Employment Agreement.

Agnelli was terminated *for cause* for misappropriating millions of dollars from Lennox, mismanaging the operations of Lennox, withholding information and documents from other Lennox shareholders and its other director and officer, Juan Castellanos Bonillo ("Castellanos"), to conceal Agnelli's wrongdoing, and engaged in other brazenly wrongful activities solely for personal self-gain, all contrary to his legal and fiduciary duties, obligations and responsibilities. As a result, Agnelli is entitled to no relief under Count I of the Amended Complaint alleging breach of the Employment Agreement.

Additionally, Agnelli fraudulently induced Castellanos to sign the Employment Agreement and, as a result, it is unenforceable and should be rescinded. Even if the agreement were valid, Agnelli breached the Employment Agreement by deliberately failing to honor multiple terms of the Employment Agreement, rendering his claim unsupportable. Agnelli is not entitled to any recovery, because he was properly terminated for cause for substantial misappropriation of corporate assets, criminal fraud, forgery and a plethora of other reasons.

In any event, Agnelli has no compensable damages. As the Court has already determined, the $6 million so-called "liquidated damages" provision in the Employment Agreement is an unenforceable penalty under Florida law. And Agnelli has not pleaded – and cannot prove – any actual damages. He is an alien without a work visa and cannot perform the responsibilities required under the alleged Employment Agreement on which his claim is based.

### 2. Lennox's Counterclaims.

Because Agnelli breached his fiduciary and statutory duties owed to Lennox and its shareholders, as well as his obligations under the Employment Agreement, Lennox asserted Counterclaims for Breach of Fiduciary Duty (Count II), Breach of Contract (Count IX), Unjust Enrichment (Count VII) and for an Accounting (Count VIII) and is entitled to recover more than $6 million in damages from Agnelli. Lennox's forensic accounting expert witness (Berkowitz Pollack Brant) conducted a comprehensive, detailed investigation into Agnelli's misappropriations, wrongful expenditures, false reimbursements, mismanagement and other wrongdoing and will, among several other witnesses, testify to Agnelli's wrongful conduct and $6 million-plus in damages caused thereby.

### 3. Agnelli's Dissolution Claim.

In response to Agnelli's claim for judicial dissolution of Lennox, Lennox, pursuant to Section 607.1436, Florida Statutes, elected its statutory remedy to avoid judicial dissolution. Because the parties did not agree upon the fair value of these shares, the Court must determine the fair value of the 125 shares currently titled in Agnelli's name and what net amount, if any, Lennox may be required to pay Agnelli

Pursuant to Section 607.1436(4), the fair value of Agnelli's shares should be determined as of August 16, 2020, the day before Agnelli initiated his judicial dissolution claim, as there has been no other date deemed appropriate by the Court to determine the fair value of Agnelli's shares.

Lennox's valuation expert (Gordon Brothers) will show that the fair value of the shares as of August 16, 2020, is $1,900,000 without consideration of the outcome of Plaintiff's breach of contract claim or Lennox's Counterclaims or any other equitable matters this Court may consider. That value will be subject to material reduction by reason of Agnelli's wrongful conduct and activities.

## II. The basis of federal jurisdiction

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and involves a citizen of Argentina as plaintiff, and a citizen of Florida as defendant.

## III. The pleadings raising the issues

1. Agnelli's Amended Complaint [ECF No. 9]

2. Lennox's Answer to Amended Complaint, Affirmative Defenses and Counterclaim [ECF No. 10].

3. Agnelli's Answer and Affirmative Defenses to Counterclaim [ECF No. 13]

## IV. A list of all undisposed of motions or other matters requiring action by the Court.

1. Lennox's Motion to Exclude Reports and Testimony of Plaintiff's Experts [ECF No. 66]

## V. A concise statement of uncontested facts which will require no proof at trial, with reservations, if any.

1. Agnelli is a citizen of Argentina. He resided in Florida at the time of the filing of this action.

2. Lennox Miami Corp. is a Florida corporation authorized to do business in Florida.

3. On November 29, 2010, Lennox purchased the property located at 1900 Collins Avenue, Miami Beach, Florida 33139, which was the site of the iconic Peter Miller Hotel (the "Property").

4. As of November 29, 2010, (1) Juan Castellanos Bonillo ("Castellanos") owned 750 shares out of the total 1,000 shares in Lennox and was Lennox's Director and Vice President; (2) Agnelli owned 125 shares of Lennox and was Lennox's other Director and President; and (3) Analia Castellanos owned the remaining 125 shares.

5. Agnelli and Castellanos were the only officers and directors of Lennox until Agnelli was removed as both an officer and director.

6. On or about December 11, 2015, Castellanos' 750 shares in Lennox were transferred to Invernorth Limited, a British Virgin Islands company ("Invernorth"). Castellanos is attorney-in-fact for, and authorized to act on behalf of, Invernorth.

7. After the Property was purchased, remodeling and construction for the Hotel began, a process that continued until approximately July 2019.

8. Lennox spent more than $60,000,000 for the remodeling and construction of the Hotel, and the final product was essentially a new build hotel.

9. Agnelli was the authorized signer for Lennox's three bank accounts located at City National Bank.

10. The Hotel opened for business to guests in or about August 2019.

11. Lennox retained Driftwood Hospitality Management II, LLC ("Driftwood") to manage the Hotel's day-to-day operations (including setting rates, marketing, guest reservations, guest check-in and check-out, guest billing and payments).

12. Agnelli oversaw Driftwood's operations of the Hotel.

13. From 2012 through 2016, Lennox paid Agnelli a $90,000.00 annual salary.

14. In December 2017, Agnelli and Castellanos signed the employment agreement (the "Employment Agreement").[2]

15. Neither Castellanos nor Agnelli speaks or reads English.

16. The Employment Agreement was prepared only in English.

17. On June 22, 2020, Agnelli and his counsel received a letter stating that he was terminated for cause from Lennox, which was sent in English and Spanish (the "Termination Letter").

18. On July 8, 2020, Agnelli initiated this action for breach of the Employment Agreement.

19. On July 31, 2020, Lennox filed its Answer, Affirmative Defenses and Counterclaims [ECF No. 7].

20. On August 17, 2020, Agnelli amended the Complaint to assert a claim against Lennox for judicial dissolution action, pursuant to Fla. Stat. § 607.1430 [ECF No. 9].

21. On August 31, 2020, Lennox filed its Answer, Affirmative Defenses and Counterclaims. [ECF No. 10].

---

[2] Lennox and Castellanos maintain the Employment agreement is voidable, unenforceable and/or should be rescinded having been fraudulently induced by Plaintiff.

    22. On November 13, 2020, Lennox, pursuant to Fla. Stat. § 607.1436, filed its Notice of Election to purchase the 125 shares of the capital stock of Lennox issued in the name of Agnelli in lieu of judicial dissolution of Lennox. [ECF No. 17].

**VI.** **<u>A statement in reasonable detail of issues of fact which remain to be litigated at trial.</u>**

*I. Plaintiff's Statement of Issues of Fact Which Remain to be Litigated At Trial:*

    a. <u>Statement of Pending Issues of Fact as to Employment Claim and Lennox Counterclaims:</u>

        i. Whether Lennox terminated Agnelli with or without cause.

        ii. If Lennox breached the Employment Agreement, the amount of damages Agnelli is entitled to recover from Lennox.

    b. <u>Statement of Pending Issues of Fact as to Valuation Claim:</u>

        i. What is the fair value of Agnelli's 125 shares in Lennox?

*II. Defendant's Statement of Issues of Fact Which Remain to be Litigated at Trial:*

    (a)    As to Plaintiff's claim for breach of the employment agreement and Lennox's Affirmative Defenses: thereto:

    (i)    Whether Agnelli[3]: used Lennox monies to pay for his own personal expenses, including to build and furnish his million dollar waterfront Coral Gables residence, to pay for his living expenses (including his personal travel, clothes, fuel, groceries, lodging, etc.); caused Lennox to pay him in excess of the $1.2 million annual salary set forth in his Employment Agreement; withheld without good and valid reason Lennox documents from Lennox's majority shareholder, vice-president and other director; submitted to, and received from, Lennox reimbursements for costs he never incurred; requested a prospective restaurant lessee to pay him hundreds of thousands of dollars to lease space at Lennox, which payments were made to Agnelli (personally) and never remitted to Lennox; caused Lennox to classify and report Lennox's payment of his personal expenses on Lennox's income tax returns signed by Agnelli under penalties of perjury and filed with the U.S. Internal Revenue Service; caused Lennox to submit to the U.S. government a forged application in Lennox's name for a work visa for Agnelli; failed to inform Lennox, its other director and/or its shareholders regarding the affairs of Lennox; took and has not returned Lennox's personal property; denied and/or impeded Lennox's access to its own monies; prepared and dishonestly induced Lennox to sign the Employment Agreement with unreasonable and unfair terms; misrepresented his stock ownership in Lennox to third parties,

---

[3] Lennox points out that certain of the following facts are undisputed in the record based on Plaintiff's admissions made in response to Lennox's Statement of Material Facts filed in support of its Summary Judgment Motion [ECF Nos. 47 and 51].

thereby exposing Lennox to potential civil and criminal liabilities; failed to fulfill his other duties, obligations and responsibilities as a shareholder, director and officer; failed to comply with Lennox's bylaws; and/or failed to dedicate sufficient time and efforts to Lennox as required by the Employment Agreement and/or applicable law by entering into other agreements, including another employment agreement with another entity for the same time period (some of the "Acts Complained Of").

        (ii)    Did Agnelli induce Lennox to sign the Employment Agreement by failing to truthfully inform Castellanos of the purpose, nature, and content of the Employment Agreement when requesting Castellanos to sign it.

        (iii)    Whether there was any meeting of the minds between the parties on the essential terms of the Employment Agreement.

        (iv)    Assuming arguendo Agnelli may enforce the Employment Agreement, did he properly plead and prove any compensable damages.

    (b)    As to Plaintiff's claim for judicial dissolution of Lennox:

        (i)    The value of the Hotel as of the date of valuation;

        (ii)    The value of Lennox's other assets as of the date of valuation;

        (iii)    The dollar amount of all Lennox's liabilities known or knowable as of the date of valuation;

        (iv)    The percentage discount to be applied because the 125 shares are only a minority interest.

        (v)    The percentage discount to be applied for the lack of marketability of the 125 shares.

    (c)    As to Lennox's Counterclaims:

        (i)    Whether Agnelli committed the Acts Complained of, among others.

        (ii)    To what extent did Lennox suffer compensable damages as a result of the Acts Complained of among others.

**VII.** **A concise statement of issues of law on which there is agreement.**

1. Jurisdiction is proper before the Court pursuant to 28 U.S.C. § 1332.

**VIII.** **A concise statement of issues of law which remain for determination by the Court.**

*I. Plaintiff's Statement of Issues of Law Which Remain For Determination by the Court:*

a. Statement of Pending Issues of Law as to Plaintiff's Claims and Affirmative Defenses:

  i. Count I (Breach of Employment Agreement):

    1. Whether Lennox breached the Employment Agreement?

    2. If Lennox breached the Employment Agreement, what amount of damages is Plaintiff entitled to recover?

    3. Is Lennox entitled to any setoff as to any damages Lennox may owe to Plaintiff?

  ii. Count II (Valuation of Shares):

    1. What is the appropriate date of valuation of Agnelli's shares in Lennox Miami Corp.?

    2. What is the fair value of Agnelli's 125 shares of Lennox Miami Corp.?

b. Statement of Pending Issues of Law as to Defendant's Counterclaims and Affirmative Defenses:

    1. Whether Plaintiff breached any fiduciary duty to Lennox?

    2. Whether Castellanos (who at all times controlled the 75% majority interest of shares of Lennox) has unclean hands (applies to all Counterclaims asserted by Lennox).

    3. Whether Lennox was fraudulently induced into signing the Employment Agreement.

    4. Whether the Employment Agreement was ratified by Castellanos (who at all times controlled the 75% majority interest of shares of Lennox) (also applies to Count VI).

    5. Whether Lennox waived its right to challenge enforceability of the Employment Agreement (also applies to Count VI).

    6. Whether the Employment Agreement should be rescinded on grounds that it is a void or voidable Director's Conflict of Interest transaction?

    7. Whether Lennox has a valid claim against Agnelli for unjust enrichment?

        8. Whether Lennox's claim for unjust enrichment is invalid because there was an express contract between Lennox and Agnelli that governed their relationship?

        9. Whether Plaintiff breached the Employment Agreement as alleged by Lennox in this document?

    c. Statement of Other Pending Issues of Law:

        1. Whether Fla. Stat. § 448.08 applies to this action as a matter of law and, if so, whether any of the parties are entitled to recover attorneys' fees?

*II. Defendant's Statement of Issues of Law Which Remain For Determination by the Court:*

(a)    Whether Lennox was fraudulently induced into signing the Employment Agreement, and, therefore, it is unenforceable or should be rescinded.

(b)    Whether the Employment Agreement is otherwise unenforceable because it was unconscionable or constitutes an improper conflict of interest transaction by Agnelli as an officer and/or director of Lennox.

(c)    If the Employment Agreement is valid and enforceable, whether Agnelli is barred from any recovery due to any one, or combination of, the following reasons:
- He was terminated for cause and the Employment Agreement does not provide for any recovery if Agnelli is terminated for cause; and/or
- His prior material breaches of the Employment Agreement, and/or
- He breached his fiduciary and statutory duties owed to Lennox; and/or
- He has unclean hands
- Set-offs due Lennox
- He failed to properly plead and prove any compensable damages.

(e)    Whether Agnelli's assertion that he was authorized to act as he did based upon a twenty year old oral agreement/course of conduct which Agnelli claims he had with Castellanos, personally, fails because:

- Agnelli did not plead this as an affirmative defense to Lennox's Counterclaims or a Reply to Lennox's Affirmative Defenses; and/or
- Agnelli's Employment Agreement has a merger and integration clause that expressly precludes Plaintiff's reliance on any prior agreements or understandings that conflict with the Employment Agreement; and/or
- Agnelli's responsibilities and obligations under his Employment Agreement forbid, contradict or prohibit the conduct he seeks to excuse; and/or

- Agnelli may not seek to enforce certain provisions of the Employment Agreement while re-write others based on his alleged prior oral agreement/course of conduct; and/or
- No one can authorize Agnelli to commit tax fraud, immigration fraud or other fraud or criminal acts; and/or
- It may not excuse Agnelli's failure to fulfill fiduciary or statutory duties owed to Lennox and its shareholders; and/or
- It may not authorize Agnelli to forego observing corporate formalities required by law; and/or
- It does not comply with statutory law and/or other applicable law; and/or
- The defense is barred by the statute of frauds; and/or
- The defense is barred by the parol evidence rule.

(f) As to Lennox's Counterclaims for Breach of Fiduciary Duties and Breach of the Employment Agreement, whether the Acts Complained of (among others) entitle Lennox to recover its compensable damages.

(g) As to Lennox's Counterclaim for Unjust Enrichment, whether Agnelli is liable to Lennox for unjust enrichment, and if so, the amount of said unjust enrichment.

(h) As to Lennox's Counterclaim for an Accounting, whether Lennox is entitled to have Agnelli provide a full and complete accounting of his activities while he was in complete control and management of Lennox.

(i) As to Agnelli's claim for Dissolution, (i) what is the fair value pursuant to Fla. Stat. § 607.1436 of the 125 shares owned by Agnelli; and (2) whether Agnelli commenced, continued or participated in this case and has acted arbitrarily, frivolously, vexatiously, or not in good faith, the court may, in its discretion, award attorney fees and other reasonable expenses to the Lennox under Fla. Stat. Sec.'s 607.1431(5), 607.1434(1)(d), and 607.1436(5).

(j) Whether there is a prevailing party under Count I of the Amended Complaint who may be entitled to recover attorneys' fees.

**IX. Each party's numbered list of trial exhibits, other than impeachment exhibits, with objections, if any, to each exhibit, including the basis of all objections to each document, electronically stored information and thing.**

Plaintiff's Exhibit List is attached as Exhibit A.

Defendant's Exhibit List is attached as Exhibit B.

**X. Each party's numbered list of trial witnesses, with their addresses, separately identifying those whom the party expects to present and those whom the party may call if the need arises.**

Plaintiff's Witness List is attached hereto as <u>Exhibit C</u>. [4]

Defendant's Witness List is attached hereto as <u>Exhibit D.</u> [5]

## XI. **Estimated trial time.**

The parties estimate a total of 12 days for trial of all claims and counterclaims.

## XII. **Where attorney's fees may be awarded to the prevailing party, an estimate of each party as to the maximum amount properly allowable.**

<u>Plaintiff's Fees</u>: In the event that Fla. Stat. § 448.08 applies to this action as a matter of law, and Plaintiff is successful as to Count I, he may be entitled to attorneys' fees. If Plaintiff is awarded his attorneys' fees and costs, the maximum amount allowable would be those fees and costs that are reasonable.

<u>Defendant's Fees</u>: If Lennox is successful as to Count I, Lennox may be entitled to recover fees under Fla. Stat. § 448.08. If Lennox is awarded its attorneys' fees and costs, the maximum amount allowable would be those fees and costs that are reasonable.

If this Court determines that Agnelli commenced, continued, or participated in this case and has acted arbitrarily, frivolously, vexatiously, or not in good faith, the court may, in its discretion, award attorney fees and other reasonable expenses to the Lennox under Fla. Stat. Sec.'s 607.1431(5), 607.1434(1)(d), and 607.1436(5).

---

[4] Defendant notes it intends to object to the inclusion of certain witnesses on Plaintiff's witness list, including (1) those witnesses not previously identified in initial disclosures; and (2) those witnesses who do not have personal knowledge, including but not limited to corporate representatives.

[5] Plaintiff notes it intends to object to the inclusion of certain witnesses on Defendant's witness list, including (1) those witnesses not previously identified in initial disclosures; and (2) those witnesses who do not have personal knowledge, including but not limited to corporate representatives.

| | |
|---|---|
| SHUTTS & BOWEN LLP<br>*Attorneys for Lennox*<br>200 S. Biscayne Boulevard<br>Miami, FL 33131 | HOLLAND & KNIGHT LLP<br>*Attorneys for Diego Agnelli*<br>701 Brickell Avenue, Suite 3300<br>Miami, Florida 33131 |
| By /s/ *Geoffrey L. Travis*<br>Geoffrey L. Travis<br>Florida Bar No. 988812<br>Gtravis@shutts.com<br>Douglas M. Kramer<br>Florida Bar No. 243086<br>Dkramer@shutts.com<br>Erik R. Matheney<br>Florida Bar No. 005411<br>EMatheney@shutts.com<br>Frank A. Zacherl<br>Florida Bar No. 868094<br>FZacherl@shutts.com | By: */s/ Jesus E. Cuza*<br>Jesus E. Cuza<br>Florida Bar No. 42899<br>jesus.cuza@hklaw.com<br>J. Raul Cosio<br>Florida Bar No. 503630<br>raul.cosio@hklaw.com<br>Brian H. Koch<br>Florida Bar No. 637335<br>brian.koch@hklaw.com<br>Annelise Del Rivero<br>Florida Bar No. 1003234<br>annelise.delrivero@hklaw.com |

MIADOCS 24153565 1