## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22800-Civ-SCOLA/TORRES

DIEGO AGNELLI,

      Plaintiff,

v.

LENNOX MIAMI CORP.

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO STRIKE
## PLAINTIFF'S EXPERT WITNESSES

This matter is before the Court on Defendant Lennox Miami Corp.'s ("Lenox") Motion to exclude Plaintiff's experts Sheri Fiske Schultz and Kathleen Conroy on grounds of untimeliness, improper rebuttal, and methodology. [D.E. 66]. Plaintiff filed a timely response to the motion on December 6, 2021, [D.E. 75], to which Defendant replied on December 13, 2021. [D.E. 79]. Therefore, Defendant's motion is now ripe for disposition.[1] After careful consideration of the motion, the response, the reply, the attachments to each, the relevant authorities, and for the reasons discussed below, Defendant's motion to strike is **DENIED**.

---

[1] On February 15, 2022, the Honorable Robert N. Scola referred this motion to the undersigned Magistrate Judge for disposition. [D.E. 89].

## I.    BACKGROUND

This lawsuit arises from a business relationship that derailed after Plaintiff divorced his former wife, Analia Castellanos, in late 2019 and early 2020. [D.E. 100, p. 2].  According to Plaintiff, following his separation from Ms. Castellanos, his former farther in law, Juan Castellanos, took several actions aimed at ousting Plaintiff from the family business, including terminating his employment contract with Lennox and buying off his minority interest in the company (*i.e.*, 125 shares of Lennox stock).  *Id*. at 2-3.  Lennox is a holding company whose only asset is a hotel in Miami Beach called the Lenox Hotel.  [D.E. 66-2, p. 1].

Plaintiff commenced this action seeking damages against Lennox for breach of his employment contract and seeking a judicial dissolution of Lennox.  In support of his claims, Plaintiff retained valuation experts Kathleen Conroy ("Conroy") and Sheri Fiske Schultz ("Fiske") to provide testimony regarding Lennox's value.

## II.    APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony.  *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).  As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.  The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence.  *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300,

1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology

properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

## III.   ANALYSIS

First, Defendant moves to strike the rebuttal report and exclude the testimony of Fiske under the theories that her report was untimely, the report was not a proper rebuttal, and the methodology was unreliable.  Additionally, Defendant also moves to strike Conroy's initial report on the grounds that the report is not relevant. [D.E. 66].   Plaintiff responds by noting that Fiske's report was timely and implemented a proper methodology, and by arguing that her rebuttal report is a proper rebuttal to the expert report prepared by Defendant's expert, Gordon Brothers.  We will discuss each of these arguments in turn.

### A.   *Whether Fiske's Rebuttal Was Timely*

Defendant Lennox first seeks to strike the opinions of Fiske and exclude her testimony on the basis that her report was untimely as per the governing Scheduling Order [D.E. 30].  However, a plain reading of the Scheduling Order and the case's docket reveals that Defendant's argument is meritless.

5

For starters, Defendant's motion improperly conflates the concept of timeliness with that of the contents of a proper rebuttal report.  As for the untimeliness argument, a plain reading of the Scheduling Order and Fed. R. Civ. P. 26(a)(2)(D)(ii) directly belies Defendant's argument.  The deadline for disclosure of expert reports was **August 18, 2021**, and rebuttals were to be produced in accordance with Fed. R. Civ. P. 26(a)(2)(D)(ii) (*i.e.*, by **September 18, 2021**).  [D.E. 30].  Because Plaintiff's expert disclosures squarely fell within these deadlines (initial and rebuttal reports were disclosed on August 18, 2021, and September 17, 2021, respectively) Defendant's claim of untimeliness is without merit.

### B.   *Whether Fiske's Rebuttal Report is a Proper Rebuttal*

Next, Defendant moves to exclude Fiske's rebuttal report on the grounds that her report is not a proper rebuttal in that it includes new affirmative opinions that should have been disclosed in Plaintiff's initial report.  Specifically, Defendant takes issue with Fiske's rebuttal opinion about the market value of Plaintiff's 125 shares of Lennox stock.

Defendant's argument that Fiske's report is not a proper rebuttal misses the mark.  Defendant claims that the rebuttal is improper because "[a]lthough a portion of the Fiske rebuttal report contains rebuttal matters directed to the expert report of Gordon Brothers, paragraphs 17-26 of the Fiske report (Ex. C) contain a new opinion of the value of Plaintiff's 125 shares. Those paragraphs must be stricken, and Fiske must be precluded from offering that opinion as evidence in Plaintiff's case in chief." [D.E. 66, p. 6].  Yet the analysis for assessing the validity of a rebuttal does not focus

6

on whether the report contains new information, addresses central issues or whether it relies on materials that were previously available to the expert, "but [on] whether it is intended solely to contradict or rebut evidence on the **same subject matter** of an opponent's expert report." *Doreen O'Malley v. Royal Caribbean*, No. 17-CIV-21225, 2018 WL 11350570, at *2 (S.D. Fla. May 24, 2018) (emphasis added); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (finding that an expert may include material in rebuttal report even though material could have been included in initial report).

A plain reading of Fiske's report makes it clear that her rebuttal is used solely to respond to Defendant expert, Gordon Brothers.  Gordon Brothers was retained by Defendant "to determine the Fair Value of 125 shares out of 1,000 outstanding shares in [Lenox] on a minority, non-marketable basis."  [D.E. 66-2].  On the other hand, the purpose of the Fiske report is to demonstrate that "the Gordon Report significantly understated the Fair Value of 125 shares in Lennox Miami Corp." by "incorrectly appl[ying] discounts for lack of control and lack of marketability in its methodology[.]"  [D.E. 66-2, ¶¶ 3, 6].  Indeed, a review of the Fiske report reveals that her analysis responds to Gordon Brothers' assessment point by point, including (i) their computation of marketability and minority discounts in the valuation of the 125 shares, (ii) the inclusion of the Paycheck Protection Program Loan adjustment into the valuation, (iii) the subtractions for "Excess Paid in Capital" and the factual assumptions made therein, and (vi) Gordon's consideration of Lennox's trademark assets. *See id*. at ¶¶ 11-26.  In sum, the Gordon Report offers an opinion on what the

market value of the 125 shares is, and the Fiske report refutes that opinion by directly contradicting its methodology and offering what she believes to be the correct numbers. The Fiske Report is "a direct challenge to the [Gordon] Report's conclusions[,]" and hence a "proper rebuttal" report. *See Papasan v. Dometic Corp.*, No. 16-22482-CIV, 2019 WL 7376716, at *3 (S.D. Fla. Apr. 10, 2019).

The fact that Fiske's rebuttal goes beyond August 16, 2020, Gordon's effective date of appraisal is of no moment, as this divergence in valuation timeframes is precisely at the center of Fiske's points of rebuttal on the same subject matter— valuation of the 125 shares. In fact, Defendant's emphatic reliance on the use of the June 30, 2021, deadline as grounds for exclusion misunderstands the purpose of a motion in limine. As Defendant's own expert reminds us, reaching a determination of value is "a question of fact" that "depend[s] on the specific circumstances of each case[,]" [D.E. 66-2, p. 3]. As such, questions about valuation dates are inappropriate grounds to seek exclusion, for this hinges on factual matters that fall within the domain of the trier of fact. *See GWTP Invs., L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383-L, 2007 WL 7630459, at *5 (N.D. Tex. Aug. 3, 2007) ("To the extent that [Defendant] believes the date of the valuation of the teleports to be critical, the difference in the dates is an issue of weight to be afforded to Shaw's opinion and may be raised at trial before the jury.").

Nor is the Court convinced that introduction of the rebuttal report with its divergent valuation timeframe unduly surprises and prejudices Defendant. First, Defendant was clearly on notice that Plaintiff's theory of valuation applied a different

8

chronology than that chosen by Defendant.  This is something that the initial report is explicit about.  *See* [D.E. 66-1, pp. 7, 8, 14, 67] (using effective date of appraisal as of July 13, 2021 and explaining that an emphasis on data from 2021 provides a more reliable valuation given the effects of COVID-19 in the hospitality industry in 2020)."  In turn, Fiske's rebuttal explains that "[t]he Fair Value of the equity in [Lennox] was determined as of June 30, 2021, i.e., the Valuation Date, in order to correspond to the valuation of the real property as performed as of July 13, 2021 [by Conroy]."  [D.E. 66-3, ¶ 18].

Second, this is not a case in which the rebuttal was produced on the eve of trial, or where Plaintiff refused to produce his rebuttal expert for deposition.  Here, Defendant received the rebuttal report on September 17, 2021, and expert discovery continued until October 27, 2021.  Further, Defendant deposed Plaintiff's rebuttal expert not once, but twice, in October 27 and November 10, for a total of six hours.  *See Finestone v. Fla. Power & Light Co.*, No. 03-14040-CIV, 2005 WL 6745903, at *1 (S.D. Fla. Nov. 28, 2005) (refusing to strike rebuttal reports and instead ordering that rebuttal experts be made available for depositions).  Moreover, during her depositions Fiske was questioned about her valuation date and she provided the rationale behind her assessment; namely, that given the unusual effects of the pandemic on the earning of the hotel in 2020 and lack of transactions therein, assessing 2021 data would be more indicative of the hotel's true value.  *See* [D.E. 65-2, 14:15-23, 131:17-132:25; D.E. 65-3, 182:5-21].

In sum, the Court is unpersuaded by Defendant's claim that Fiske's report is an improper rebuttal because it introduces new affirmative opinions.  As noted above, the Fiske report is a direct challenge to Defendant's expert opinion on the value the 125 outstanding shares of Lennox stock.  Moreover, whether Plaintiff's valuation date is proper is a question that hinges on issues of fact reserved for the jury, and the introduction of the rebuttal does not unduly surprise or prejudice Defendant.

### C. *Whether Fiske's Opinion is Reliable*

Defendant also seeks to strike and exclude Fiske's opinion and testimony as unreliable.  Notably, Defendant does not challenge Fiske's qualifications as a valuation expert.  Instead, Defendant takes issue with Fiske's methodology, alleging that she applied the wrong valuation date and the wrong valuation standard in her assessment.  [D.E. 66, pp. 14-16; 79, pp. 4-10].  These arguments are unavailing because they raise issues of law and fact that are not properly presented in a motion in limine.

Defendant claims that Fiske committed error in not applying a minority or lack of marketability discount to her valuation.  Defendant does not attack the techniques or valuation approaches implemented by Fiske, [D.E. 66-3, ¶ 19] ("In estimating the Fair Value of the equity in the Company, I considered the three generally accepted approaches for valuing an ongoing business entity[.]").  Instead, Defendant cites to case law and points out that courts always apply such discounts in dissolution cases and, as such, Fiske's omission makes her opinion unreliable.  We reject this argument because the question of whether the Court should apply a "fair value" or a "fair

market value" standard to this case is not an issue to be decided on a motion in limine. *See Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 13012778, at *7 (S.D. Fla. May 24, 2012) ("Defendants' initial argument is an inappropriate request for the Court to rule on an issue of law. Such a request is not properly presented in a motion in limine and therefore will not be addressed further."); *Hall v. Nettles*, No. 1:08-CV-2437-TCB, 2010 WL 11493784, at *11 (N.D. Ga. Jan. 7, 2010) ("The Court finds that Defendants' arguments are their position on the disputed facts, and the Court will not resolve the factual disputes within the context of this motion."); *Soliday v. 7-Eleven, Inc.*, No. 2:09-CV-807-FTM-29, 2011 WL 1837807, at *1 (M.D. Fla. Apr. 20, 2011) (stating that a motion in limine is not a motion "to determine the sufficiency of the evidence or merits of an issue") (citation omitted).

Second, and as noted above, Defendant's claim that the Fiske report is unreliable because it used the wrong valuation date is also unavailing.  This is a factual issue to be presented to the jury.  *See Mcgarity v. FM Carriers, Inc.*, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*."); *Hightower v. Goldberg*, 2018 WL 296955, at *2 (M.D. Ga. Jan. 4, 2018) ("Defendants' objections go to the weight and credibility of Mr. Beauchamp's opinions, not their reliability."); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("Questions relating to the bases and sources

11

of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

In sum, Fiske's methodology satisfies *Daubert*. The criticisms outlined in Defendants' Motions are more appropriate at trial and upon cross examination, as any such objections go to the weight of the evidence rather than its admissibility. *See Quiet Tech.*, 326 F.3d at 1345 (holding that the expert's methodology was reliable, even though he did not utilize all available flight test parameters in his model; the remedy is effective cross examination to test the expert's analysis.); *In re Trasylol Prod. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.") (citations and internal marks omitted).

### D. _Whether the Conroy Report is Relevant_

Finally, Defendant moves to exclude the report and opinion of Conroy as irrelevant. According to Defendant, the fact that the Conroy report encompasses only a valuation of the real estate of the hotel and not a valuation of Plaintiff's minority shares in Lennox renders her opinion irrelevant. We disagree.

It is undisputed that the hotel is the only asset owned by Lennox, and experts for both Defendant and Plaintiff admit that the valuation of the shares is based, in part, on the real estate appraisal of the hotel. Accordingly, Conroy's valuation of the hotel "is relevant to the task at hand and logically advances a material aspect of its

case." *Valdes v. Miami-Dade Cty.*, No. 12-22426-CIV, 2015 WL 6829055, at *2 (S.D. Fla. Nov. 6, 2015).  In sum, Defendant's irrelevancy argument is unfunded.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to exclude and strike the opinions and testimony of Plaintiff's experts is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 5th day of May 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

13